**UNITED STATES of America, Appellee,**

v.

**Thomas Joseph CARRANCO, Appellant.**

**No. 76–1172.**

United States Court of Appeals,
Tenth Circuit.

March 30, 1977.

J. Scott Hamilton, Denver, Colo., for appellant.

James L. Treece, U. S. Atty., and C. Scott Crabtree, Asst. U. S. Atty., for appellee.

Before LEWIS, Chief Judge, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellant was convicted of knowingly receiving and possessing goods taken from an interstate shipment in violation of 18 U.S.C. §§ 659 and 2. He was found guilty by the jury, and has taken this appeal.

The theft of a shipment of copper wire was charged. The facts, as summarized from the record, are as follows. Thompson Lightning Protection, Inc., of St. Paul, Minnesota, sent a shipment by truck of copper wire and other items to Gardner Zemke Company in Albuquerque. This shipment was picked up at the Thompson factory in St. Paul by the carrier, Admiral-Merchants Motor Freight, Inc., which prepared the freight bill from Thompson's bill of lading. Admiral-Merchants then transported the shipment to its Denver terminal.

Upon its arrival in Denver, the shipment was picked up from Admiral-Merchants terminal by ICX, an interstate truck line, which was to take it from Denver to Gardner Zemke in Albuquerque on an interline shipment. At the Admiral-Merchants terminal the ICX driver Kirk loaded the shipment consisting of some large reels of copper wire, smaller reels of wire, and cardboard boxes, into ICX truck No. 1895. He made notations on the freight bills and gave Admiral-Merchants a copy. After two stops at other trucking companies, he returned to the ICX terminal where he parked the truck and gave the foreman the freight bills he had taken from the different companies, including the bill in issue.

Later on the same day, when truck No. 1895 was supposed to be unloaded it was found to be missing from the ICX terminal yard. The truck was recovered the next day, and was returned to the terminal. An ICX supervisor then made an inventory of the truck's contents by checking off the items still on the truck against the items listed on the freight bill received from Admiral-Merchants. The shipment was found to be fifteen items short, and no spools of copper wire were found on the truck.

The record shows that the appellant sold 350 pounds of copper wire several days later to Atlas Metal and Iron Corporation in Denver. Appellant and one Randy Johnson had been seen a few days before loading copper wire from a garage in Denver into Johnson's car. Appellant was interviewed by the FBI, and he admitted that he had sold the wire to Atlas Metal. He stated that he believed Randall had found the wire in a field. Appellant later admitted that he knew the wire was probably stolen, but he had sold it anyway and had received some money for his efforts.

The only error asserted by appellant on this appeal is that the trial court erred in admitting into evidence the Government's Exhibit 6–A, which was the freight bill prepared initially by Admiral-Merchants for the interline shipment, and used by ICX in loading and inventorying truck No. 1895 and for the subsequent shipment. The appellant objected to the admission of the freight bill as a business record on the ground that some of the notations were not accounted for as having been made in the regular course of business. This was the objection made to the trial court immediately before the admission of Exhibit 6–A.

Appellant's assignment of error here can also be read as an objection to the freight bill as a whole because the bill was prepared by Admiral-Merchants, not ICX, and no witnesses were called by the Government to testify to the procedures used by Admiral-Merchants to prepare the freight bill. This objection was not brought before the trial court before the admission of Exhibit 6–A, and will not be separately considered here. Thus the basic issue considered here is whether the waybill notations prevented it from being properly admitted as part of ICX business records. See 28 U.S.C. § 1732 and Rule 803(6), Federal Rules of Evidence.

The appellee urges that there was sufficient foundation laid for the admission of the freight bill; the statute and the Rules were followed, and error, if any, was harmless.

The appellant is most specific in his objection to the pencilled notations on the face of the freight bill to add "4 SPLS WIRE," and the striking out of "21 TTL" (total), and the writing in of "25 TTL." The appellant thus maintains that because these additions and changes were not properly explained, the entire document did not meet the standard of admission under the business record rule.

Mr. Kirk testified that he was then a driver for ICX and drove truck No. 1895 to the Admiral-Merchants Denver terminal and picked up the shipment in question. He was able to remember that it was to go to "Zemke," but he did not remember in which state. He testified that upon his arrival at the Admiral-Merchants terminal, he picked up the freight bill which listed the items in the shipment, located the shipment, and loaded it onto his truck. As he did this, he checked the number of pieces loaded into his truck with the number of pieces listed on the freight bill. Kirk testified that he loaded some reels of copper wire onto his truck with a fork lift as part of the shipment. He identified his signature on the copy of the freight bill ("Kirk"), the notation of the number of pieces he picked up ("25"), and his notation of the date ("1–3–75"). He was not asked about the notation "4 SPLS WIRE" on the bill. He stated that when he left the Admiral-Merchants terminal he signed the freight bill, left a copy with Admiral-Merchants, and took a copy with him. He testified that, though he made two more pick-ups before returning to the ICX terminal, he did not remember picking up any more loads of copper wire that day.

Mr. Kirk further stated that upon returning to the ICX terminal, he gave the freight bills he had collected on his rounds, including the one from Admiral-Merchants, to his foreman. Kirk identified Exhibit 6 as a fair and accurate copy of the waybill ". . . at the time that you filled it out or items that you filled out on it." Kirk also testified as follows on redirect:

"Q. Just a short question, if I may. Mr. Kirk, do the notations on the freight bill marked as Exhibit 6 refer to the items you loaded that day?

"A. Yes, they do."

This freight bill was itself one of several copies made by Admiral-Merchants. The contested Exhibit 6–A was later identified as the original (ICX's copy) of the freight bill of which Exhibit 6 was a Xerox copy. Exhibit 6 was not allowed into evidence on the grounds that it only duplicated Exhibit 6–A which was admitted instead.

The determination of the adequacy of the foundation for the admission of evidence, and the admission or rejection of evidence is left to the discretion of the trial court and will be overturned on appeal only

if there has been a clear abuse of discretion. *United States v. Sparrow,* 470 F.2d 885 (10th Cir.); *United States v. Brumley,* 466 F.2d 911 (10th Cir.). The admission of the freight bill here in issue is, of course, governed by the Business Records Act, 28 U.S.C. § 1732, and more recently the Federal Rules of Evidence Rule 803(6), 28 U.S.C., as an exception to the hearsay rule. Rule 803(6) and 28 U.S.C. § 1732 apply substantially the same standards for the admission of shop-books or business records. The cases which have considered the matter stress the need to get away from the "anachronistic rules" which gave rise to the passage of the Business Records Act, namely, the requirement of the testimony of those who actually wrote the records before they could be admitted into evidence. This was considered by this court in *Julander v. Ford Motor Co.,* 488 F.2d 839 (10th Cir.). The federal rules and practice favor the admission of evidence rather than its exclusion if it has any probative value at all. *Julander v. Ford Motor Co.*

Both 28 U.S.C. § 1732 and Federal Rule of Evidence 803(6) allow the introduction of records made in the regular course of business if it was the regular course of business to make the record at the time of the transaction or within a reasonable time thereafter. The Business Records Act provides that any other circumstances, including lack of personal knowledge of the entrant, goes to the weight and not the admissibility of the record. Federal Rule of Evidence 803(6) requires that (1) the report be made at or near the time of the event under consideration, (2) the record be kept in the course of regularly conducted business, (3) it was the regular practice of that business to make the record, (4) the source of information or methods or circumstances of preparation not indicate lack of trustworthiness. The Evidence Rule also states that either a custodian or "other qualified witness" could testify to the fact that the record was kept in the regular course of business.

■ Robert Buzick, the terminal manager for ICX, testified that he was familiar with the business practices of ICX, and that the freight bill, though initiated by Admiral-Merchants, was adopted and relied upon by ICX. Buzick stated that they used the freight bills received from the larger carriers to inventory their trucks each time they loaded or unloaded a shipment. These freight bills, including the one in question, were used regularly by ICX as the means of determining whether or not a shipment they received from another carrier had too many items or too few. He testified that notations were made if discrepancies appeared. They were then used by ICX as a record of the shipment for its use, and for the continuation of the haul.

The notations on the freight bill were explained by the witnesses, and this is probably more than is required by the business records exception to the hearsay rule. As pointed out by the appellee, a freight bill is not meant to be a static document nor is it used as such. As testified to by those familiar with the shipping business, a freight bill is used by many different people and it is their job to make notations on the freight bill so it will continue to be an accurate description of the shipment. It was adopted by ICX as its record, in the regular course of its business, when the ICX driver signed it as he picked up the interline shipment. He used it as an ICX record, verified the shipment, and made the notations on it. The notations as testified to by the witnesses were thus also made in the regular course of business of ICX. One of the freight bill copies went into the ICX terminal records, and one or more copies continued with the shipment. The requirements of Rule 803(6) of the Federal Rules of Evidence were met.

The freight bill with the notations was properly admitted under the shop-book exception. We find no error.

AFFIRMED.