UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard SEELIG, Terry Hawkins, and
Donald Primmer,
Defendants-Appellants.

Nos. 79–5232 to 79–5234.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1980.

Decided May 8, 1980.

Eugene L. Matan, Columbus, Ohio, for defendants-appellants.

James C. Cissell, U. S. Atty., Columbus, Ohio, William E. Hunt, Asst. U. S. Atty., Columbus, Ohio, for plaintiff-appellee.

Before KENNEDY and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Appellants are three pharmacists who appeal their misdemeanor convictions for distributing codeine-based cough medicines and felony convictions for distributing Dextropropoxyphene (brand name Darvon) and Diazepam (brand name Valium) in violation of the Controlled Substances Act, 21 U.S.C. § 841(a)(1). Appellants claim the indictments fail to state a crime with respect to the misdemeanor counts and fail to allege facts which would constitute a crime with respect to the felony counts and that the court should have granted their motion for acquittal as there was no evidence of intent. They claim certain evidence was erroneously admitted and other evidence erroneously rejected.

## I. Sufficiency of the Indictments

Appellants are pharmacists duly licensed to practice pharmacy in Ohio. All are employed by Seelig Pharmacy, Inc., which has two stores in Columbus, Ohio. The indictment consists of 174 counts, each for a separate distribution of a controlled substance. Count One charged Richard Seelig with knowingly or intentionally and unlawfully distributing a schedule V controlled substance by distributing without a prescription more than four ounces of Robitussin A/C within a 48-hour period, as prohibited by 21 C.F.R. § 1306.32, in violation of 21 U.S.C. § 841(a)(1). Counts 2–165 list other similar sales of Robitussin A/C, Terpin Hydrate Codeine, or Histadyl E/C, schedule V controlled substances. The remaining counts charge the appellants with knowingly or intentionally and unlawfully distributing schedule IV controlled substances by unlawfully refilling prescriptions for Diazepam (brand name Valium) or Dextropropoxyphene (brand name Darvon).

Appellants raise two challenges to the indictment. First, that counts 1–165 do not charge appellants with a crime but with only a violation of a regulation. Second, that counts 166–174 do not allege sufficient facts to constitute a crime as there is no allegation that the substances were not distributed within the usual course of professional practice.

## COUNTS 1–165

Appellants argue that the sale of more than four ounces of Robitussin (or other schedule V substance) within 48 hours to one person, while it violates the regulation, does not violate the Controlled Substances Act, that the Act does not make violations of the regulations criminal, and that the Attorney General, who promulgates the regulations, does not have the authority to expand the criminal liability determined by Congress in the statute. According to appellants, the statute must explicitly state that a violation of the regulations constitutes an offense. Appellants rely upon *United States v. Grimaud*, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911), which upheld a criminal conviction for using the Sierra Forest Preserve for sheep grazing without a permit as required by

regulations, where the statute authorizing the promulgation of the regulations explicitly stated that anyone who violated the statute or the rules and regulations thereunder would be subject to criminal penalties. The Supreme Court distinguished a previous case, *United States v. Eaton*, 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591 (1892), which involved a violation of regulations requiring certain books to be kept of oleomargarine sales. In *Eaton*, the statute required one kind of book be kept, but imposed no penalty for failing to do so. The Commissioner went further and required another kind of book. To hold someone criminally liable for violating the regulation in *Eaton*, said the *Grimaud* Court, "manifestly . . . was putting the regulations above the statute." 220 U.S. at 519, 31 S.Ct. at 484. Thus, a person may be held criminally liable for the violation of a regulation, but only if the statute which authorizes the promulgation of the regulations makes the violation of the regulations a crime.

The Controlled Substances Act defines what drugs are subject to control of their manufacture and distribution and lists these drugs in schedules, with different provisions pertaining to each schedule. *See* 21 U.S.C. §§ 811, 812, 823, 829. Section 841(a)(1) provides:

> (a) Except as authorized by this subchapter [The Controlled Substances Act], it shall be unlawful for any person knowingly or intentionally—
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . .

Appellants claim that they need only comply with other statutory provisions to fit within the exception stated in § 841(a)(1) and are not, as the government argues, required to comply with the regulations promulgated under the subchapter in order to distribute "as authorized by this subchapter".

Section 829(c) provides:

> No controlled substance in schedule V which is a drug may be distributed or dispensed other than for a medical purpose.

Appellants claim this section authorizes them to distribute or dispense schedule V drugs such as Robitussin for medical purposes regardless of whether more than four ounces of the drug is given to one person within a 48-hour period, despite the prohibition of 21 C.F.R. § 1306.32. Appellants' argument rests on a negative implication from § 829(c). Were there no other provisions which explicitly stated when the distribution or dispensing of schedule V drugs were authorized, this Court might accept appellants' argument. However, § 822(b) does provide the express authorization. It states:

> Persons registered by the Attorney General under this subchapter to manufacture, distribute, or dispense controlled substances are authorized to possess, manufacture, distribute, or dispense such substances (including any such activity in the conduct of research) to the extent authorized by their registration and in conformity with the other provisions of this subchapter.

The combination of § 829(c) and § 822(b) thus requires a person to dispense or distribute a schedule V drug for a medical purpose and to be within the authority of their registration as determined by the Attorney General. Section 822(a) requires every person who distributes or dispenses controlled substances to register with the Attorney General. Section 821 authorizes the Attorney General to promulgate rules and regulations relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances. Section 871(b) authorizes the Attorney General to promulgate and enforce rules, regulations, and procedures that he deems necessary for the efficient execution of his functions.

Although Congress was not as clear in this statute as in the one involved in *Grimaud*, this Court is satisfied that the statute does expressly, albeit in a convoluted fashion, provide that a violation of the promulgated rules constitutes an unlawful act.

under the Controlled Substances Act. Thus, counts 1–165 do charge crimes.[1]

## COUNTS 165–174

Appellants object to counts 165–174 because the indictment failed to charge appellants with distributing schedule IV substances "not in the usual course of professional practice." Appellants claim that pharmacists are exempt from the criminal sanctions of § 841(a)(1) if they dispense drugs in the usual course of professional practice. The facts as alleged do not amount to a crime, appellants argue, as the counts do not allege appellants acted outside the usual course of professional conduct. The government argues the indictment need not charge that the exemption does not apply.

■ An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against him and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

■ The counts in question allege that certain drugs were distributed by unlawfully refilling certain prescriptions. The prescriptions are identified by date, serial number, and issuing doctor. The counts further allege these distributions were in violation of 21 U.S.C. § 841(a)(1). Surely, enough facts are alleged to enable appellants to plead acquittal or conviction in bar of future prosecutions for the same offense since the precise acts which constitute the offense have been alleged. The only problem is whether by failure to allege the distributions were not in the usual course of professional practice the indictment fails to allege all the elements of the crime.

In *Hamling*, the Court held that as the definition of obscenity was a matter of law, not of fact, the indictment charging use of the mails to carry an obscene book and an obscene advertisement was sufficient even though the indictment did not allege the constitutional components of the definition of obscenity.

In *United States v. Ellzey*, 527 F.2d 1306 (6th Cir. 1976), this Court held that an indictment charging the defendant with illegally distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 was sufficient even though it alleged "distribute" rather than "dispense". The Court held that the defendant did distribute rather than dispense as the evidence showed the defendant did not follow generally accepted medical procedures.

The indictments in the present case also charge appellants with illegal distributions in violation of § 841(a)(1). As a matter of law, a registered doctor is subject to the criminal penalties of § 841(a)(1) if he is not acting within the usual course of professional conduct. *See United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). Thus, the allegation of distribution in violation of § 841(a)(1) includes the legal definition that the drugs were not dispensed, *i. e.*, distributed in the usual course of professional practice. That

---

1. Other courts have had no problem finding defendants guilty under 21 U.S.C. § 841(a)(1) for violating the regulations (primarily 21 C.F.R. § 1306.04). *See United States v. Hayes*, 595 F.2d 258, 259 (5th Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 89 (1979); *United States v. Roya*, 574 F.2d 386, 390 (7th Cir.), *cert. denied*, 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978); *United States v. Pastor*, 557 F.2d 930, 939 (2d Cir. 1977); *United States v. Rosenberg*, 515 F.2d 190, 196–97 (9th Cir.), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975); *United States v. Green*, 511 F.2d 1062, 1069–70 (7th Cir.), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975); *United States v. Larson*, 507 F.2d 385, 386 (9th Cir. 1974); *United States v. Bartee*, 479 F.2d 484, 488 (10th Cir. 1973). Further support for our conclusion that Congress intended a violation of the regulations to be unlawful may be found in the legislative history. *See* House Report No. 91–1444, 91st Cong., 2d Session, 1970 U.S.Code Cong. & Admin. News pp. 4566, 4569:

> The bill provides for control by the Justice Department of problems related to drug abuse through registration of manufacturers, wholesalers, retailers, and all others in the legitimate distribution chain, and makes transactions outside the legitimate distribution chain illegal.

counts 165–174 of the indictment do not state this allegation expressly does not render them defective.

## II. Jury Instructions

### A.

■ Appellants claim that they did not unlawfully distribute, but lawfully dispensed as authorized by 21 U.S.C. §§ 829(b), 829(c). They claim the government must prove they do not fall within these exceptions to § 841(a)(1) as they introduced evidence that they refilled the prescriptions for the schedule IV drugs upon lawful refill orders of doctors and dispensed the schedule V drugs for lawful medical purposes. They claim they were entitled to have the jury instructed upon §§ 829(b) and 829(c), as well as the statutory definitions of "dispense", "distribute", and "practitioner".

Section 829(b) provides that no schedule IV drug which is a prescription drug may be dispensed without a written or oral prescription. Such prescriptions may not be filled or refilled more than six months after the date of the prescription or be refilled more than five times after the date of the prescription unless renewed by the practitioner. Section 829(c) provides that no schedule V drug may be distributed or dispensed other than for a medical purpose.

Section 802(11) defines "distribution" as delivery (other than by administration or dispensing) of a controlled substance. Section 802(10) defines "dispense" to mean the delivery of a controlled substance pursuant to the lawful order of a practitioner to an ultimate user. Section 802(20) defines "practitioner" as a physician, pharmacy, (among others) or other person licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research.

Essentially, appellants wanted an instruction that if they delivered the schedule IV drugs in good faith pursuant to lawful orders of doctors and delivered the schedule V drugs in good faith for a medical purpose in the usual course of professional practice, they would not be criminally liable under § 841(a)(1).

The District Court instructed the jury that § 841(a)(1) provided:

> Except as authorized . . . it shall be unlawful for any person knowingly or intentionally . . . to . . . distribute . . . a controlled substance.

The court charged that the government must prove beyond a reasonable doubt that the substances described in the indictment were unlawfully distributed. To "distribute" was defined as "to deliver a controlled substance." The court went on to say a controlled substance was distributed "unlawfully" "if such distribution is not authorized by the statute." In instructing when the sale of schedule V drugs was authorized, the court listed the requirements of 21 C.F.R. § 1306.32. When instructing when the refill of a prescription for a schedule IV drug was authorized, the court listed the requirements of 21 C.F.R. § 1306.22.[2] The court nowhere instructed the jury that if appellants were dispensing—that is, filling prescriptions pursuant to lawful orders of practitioners or delivering drugs for good medical purposes in the usual course of professional conduct—they would be exempt from criminal liability under 21 U.S.C. § 841(a)(1).

The Supreme Court in *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), held that a registered doctor could be prosecuted under § 841(a)(1) when his activities fell outside the usual course of professional practice. The Court rejected the argument of the D.C. Court of Appeals that registered doctors are exempted from prosecution under § 841(a)(1) by virtue of their status as registered doctors and were only subject to the lesser penalties provided in §§ 842, 843. Implicit in *Moore*

---

**2.** What the court read of 21 C.F.R. § 1306.22 imposes the same requirements on refills as § 829(b) except that it adds that any refill beyond the fifth refill must be on a new and separate prescription.

is that registered doctors (or other practitioners) are exempt from criminal liability under § 841(a)(1) unless they were acting outside the usual course of professional practice. *See United States v. Kirk*, 584 F.2d 773, 784 (6th Cir.), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978). Thus, a conviction under § 841(a)(1) requires the government to prove beyond a reasonable doubt that the drugs were distributed outside the usual course of professional practice. *See United States v. Rogers*, 609 F.2d 834, 839 (5th Cir. 1980); *United States v. Hayes*, 595 F.2d 258, 259 & n.2 (5th Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 89 (1979) (pharmacist); *United States v. King*, 587 F.2d 956, 965 (9th Cir. 1978); *United States v. Black*, 512 F.2d 864, 871 (9th Cir. 1975). ,

In *United States v. Carroll*, 518 F.2d 187 (6th Cir. 1975), the defendant requested an instruction that as a doctor he had a right to prescribe controlled substances, including Seconal, and he would violate § 841(a)(1) only if he prescribed such substances outside the doctor-patient relationship. The District Court refused to so instruct, instead relying upon the language of § 841(a)(1) and the definitions of distribution, dispensing, and practitioner. This Court held the statutory definitions were not sufficient. The defendant was entitled to have the jury instructed that registered doctors are exempt from the provisions of the drug abuse statute when they dispense or prescribe controlled substances in good faith to patients in the regular course of professional practice. In the present case, appellants asked for instructions on the statutory definitions of "dispense" and "practitioner" and for §§ 829(b) and 829(c). They were entitled at least to have the statutory definitions and other relevant sections read. The failure to instruct as to §§ 829(b) and 829(c) and the statutory definitions of "distribute", "dispense", and "practitioner" was prejudicial error.

### B.

■ Appellants also object to the jury instructions in that the judge, when reading § 841(a)(1) to the jury, said distributions of controlled substances were unlawful "except as authorized", without saying as the statute does, "except as authorized by this [subchapter]". The Court finds this objection to be without merit. Six sentences later, the District Court instructed "Under Section 841(a)(1) of Title 21, United States Code, a controlled substance is distributed 'unlawfully' if such distribution is not authorized by the statute."

### C.

■ Appellants object to the jury instruction that the element of knowledge may be inferred from proof that appellants deliberately closed their eyes to what would otherwise be obvious to them. In *United States v. Thomas*, 484 F.2d 909, 912–13 (6th Cir.), *cert. denied*, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973), a case in which the defendant was charged with knowingly making false statements in purchasing a handgun, this Court approved an instruction that to find the defendant knowingly made a false statement, the jury need not find the defendant actually read the form or had it read to him "if the jury finds from the evidence beyond a reasonable doubt that the defendant acted with reckless disregard of whether the statements made were true or with a conscious purpose to avoid learning the truth." The deliberate ignorance instruction has also been approved for violations of the Controlled Substances Act. *See United States v. Kershman*, 555 F.2d 198, 200–201 (8th Cir.), *cert. denied*, 434 U.S 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977). The instruction on deliberate ignorance was not erroneous.

### III. *Evidentiary Issues*

### A.

■ Appellants claim that the testimony of Gerald Kopp, a Federal Drug Enforcement Administration investigation officer, invaded the province of the jury when he stated the requirements of federal regulations and what the routine practices of pharmacists should be according to the regulations. They specifically object to his ref-

erences to the 48-hour rule with respect to selling Robitussin, the requirement that a new and separate prescription be written for refills of schedule IV drugs after the fifth refill of the original prescription, the value of the prescriptions, and the quantity of the substances sold. They challenge his qualifications to testify about any of these matters.

The witness had been a compliance investigator with the Drug Enforcement Administration for over four years and was familiar with the regulations. He testified that he was familiar with the "value" of a prescription (that is, the number of units of drugs authorized under a prescription) and knew how the number of pills dispensed was indicated upon a prescription. The District Court did not err in permitting the witness to testify based upon his experience as a compliance officer.

### B.

■ Appellants object to the admission of exhibits 1–165. Exhibits 1–165 purported to be copies of pages of the over-the-counter exempt ledgers kept by Seelig Pharmacy. Appellants claim these are unauthenticated hearsay. Kopp testified that when he went into Seelig Pharmacy to investigate, he requested the records which are required to be kept for sales of schedule V drugs. Appellant Seelig handed him the records, which were later seized and from which the copies were made. The identification by Kopp and the admission by Seelig (Rule 801(d)(1)(2), Fed.R.Evid.) establish that the records were ones of regularly conducted activity which is an exception to the hearsay rule, Rule 803(6), Fed.R.Evid., and were properly authenticated under Rule 901, Fed.R.Evid.

### C.

■ Appellants also object to the admission of exhibits 210, 211, and 212, which are summaries made by Kopp from exhibits 1–165 showing high volume purchasers and the dates when they purchased a schedule V substance. Appellants claim these were irrelevant and prejudicial, since they show a total of 1,409 sales, of which only 32 were mentioned in the indictment. Rule 1006, Fed.R.Evid., provides that the contents of voluminous writings, recordings, or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary, or calculation. In *United States v. Scales*, 594 F.2d 558 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979), this Court held the admission of a summary chart of 161 underlying exhibits was proper. Although the underlying writings could possibly have been examined, the use of the summary was permitted under Rule 1006 as comprehension of the voluminous exhibits would have been difficult and certainly inconvenient. The facts summarized were objective and were stated in a neutral way. The chart was found to be accurate and authentic. Finally, the trial court had given a limiting instruction that the chart was not evidence but was only an aid in evaluating the evidence. In the present case, the underlying documents were numerous and inconvenient to examine. Appellants do not object to the accuracy of the summaries. They do object to the failure to give a limiting instruction, but the record does not show they asked for such an instruction.

Appellants argue that the relevance of the summaries was outweighed by their prejudice because these exhibits tend to show by the representations of high volume sales that there must have been other violations than those charged. The government claims the high volume shows knowledge and intent. Since these exhibits show only what a close reading of the underlying records also disclose, that is, that certain individuals bought schedule V drugs quite frequently, any prejudice is in the underlying evidence, not in the form of the summary.

### D.

Appellants object to the admission of exhibit 213, which purportedly is a sales comparison chart compiled by Columbus Police Officer James Dempsey, comparing the sales of nonexempt schedule V items of Seelig Pharmacy with eight other pharma-

cies allegedly comparable in size, location, and volume. The two Seelig stores, one of which is located on the east side of Columbus, Ohio and the other on the north side, were compared with an average of four east side stores and an average of four north side stores. In denying a motion in limine and holding that the chart could be admitted as a summary under Rule 1006, the District Court stated:

> The probative value of these charts will depend, of course, on the actual similarity between the stores chosen to comprise the "average" stores and the two Seelig stores. The Court is of the opinion that these matters can be developed properly upon cross-examination without undue confusion to the jury.

The admission of the sales comparison chart was error. The underlying records on which they were based were not exhibits nor were they made available to appellants. The only records of these other stores examined by Dempsey were the schedule V sales. There was no attempt to compare the stores in terms of total sales. Sergeant Dempsey was not an expert witness. He admitted he was not an economist, statistician, or real estate appraiser. The chart could not therefore be admitted under the exception for the bases of opinion testimony by experts. Rule 703, Fed.R. Evid. He did not know if his allegedly comparable stores operated the same hours. The two Seelig stores were located near a freeway. He testified that he picked, apparently at random, six stores from each area, then did not use two whose volume seemed too low. The record does not show these other stores were the same size, covered the same marketing area, were open the same hours, had pharmacists on duty at all times, had the same access to the public, or, most importantly, charged the same prices—all of which could have significantly affected the volume of sales. Thus, the sales comparison chart is simply irrelevant for failure to establish the comparability of the other stores.

The prosecutor's use of the comparison chart in final argument precludes us from finding its admission harmless error. The prosecutor told the jury that although there were only 165 instances of sales of Robitussin within 48 hours, they could use all the evidence to determine whether the defendants were acting knowingly and intentionally. He mentioned that approximately 18,000 bottles of Robitussin were sold. The trial judge interjected that those were not all unauthorized sales. The prosecutor agreed but commented, "We have not charged a count for every sale". He referred to the sales comparison chart:

> This chart has also been admitted. You can have that and look at it, and you decide what weight you want to put on the fact that Seelig's pharmacies in the red here sold some months over $1,000,000. Of course, it started out small here at the beginning of time—gradually built up. You decide what weight you want to put on that fact as opposed to the average of four stores in each vicinity . . . The purpose of this is to show . . . another circumstance to show these people must have known what they were doing.

This Court has previously considered comparisons of distributions of controlled substances in two cases. In *Kirk, supra,* to prove the defendant had the requisite knowledge of the conspiracy and the criminal intent, the government introduced the testimony of Richard Ross, who was charged to investigate all the pharmacies in a tri-county area. In this investigation, he found that drugstores were selling an unreasonable quantity of schedule II drugs prescribed by the defendant. Apparently at one pharmacy, 90% of the schedule II drugs were prescribed by the defendant, whereas all the other physicians comprised the remaining 10%. The Court found that this was evidence of intent. In *Ellzey, supra,* the Drug Enforcement Administration surveyed schedule II prescriptions from six drugstores. Of 39,000 prescriptions from 152 doctors and dentists in a 22-month period, 29,000 were written by the defendant and all but 200 of these were for amphetamines or amphetamine-type drugs. The 29,000 prescriptions were admitted to show

intent and wilfulness. The Court ruled the admission was not error.

*Kirk* and *Ellzey* establish that evidence of high volume may be used to show intent and wilfulness. However, in each of those cases, the comparison chart was relevant— the defendants were compared with all other doctors whose patients used the same pharmacies. In the present case, the jury was invited to make the same inference as was made in *Kirk* and *Ellzey*, that the large volume compared to other pharmacies indicates knowledge and intent, but the underlying figures were not truly comparable in the absence of a comparison of total sales or other appropriate basis. The exhibit suggested the jury make an inference of guilt that the exhibit did not support. Thus, the admission of the exhibit was prejudicial error.

### E.

■ Appellants also object to the trial court's refusal to allow Jack R. Lawry, a former narcotics inspector and investigator for the Ohio State Board of Pharmacy, to testify as to the custom of pharmacists regarding the sales of over-the-counter exempt drugs. Appellants proffered that he would also testify that it would be utterly impossible for a busy pharmacist to go back into the ledger to see if there had been a sale of exempt items to the same person within 48 hours. The prosecutor responds that testimony would be beyond the witness' expertise and that it would be irrelevant as appellants were not charged with operating outside the usual course of professional conduct.

Lawry was as qualified as Kopp, who was allowed to testify as to what the routine procedure of pharmacists should be under the regulations. That the indictment did not explicitly charge appellants with acting outside the usual course of professional conduct is immaterial—a violation of § 841(a)(1) necessarily implies that a registered doctor or other practitioner is acting outside the usual course of professional conduct. Lawry's testimony was relevant and should have been admitted.

*IV. Motion for Acquittal*

■ The trial court properly denied appellant's motion for judgment of acquittal. The documentary evidence discloses repeated occasions where more than four ounces of a schedule V drug was sold to the same person within a 48 hour period. With respect to the felony counts, several physicians testified that their records failed to disclose oral authorizations for renewal of prescriptions and that it was their practice to record such oral authorizations. At least one witness denied receiving any refills of a prescription which Seelig Pharmacy records showed had been refilled several times. After review of the entire record, we conclude that there was sufficient evidence of intent; the motion for acquittal was properly denied.

The prejudicial errors found by this Court require that defendants be given a new trial. The judgments are reversed and the cases remanded for proceedings in accordance with this opinion.