FEINBERG, Chief Judge:
This is the second appeal to this court by Manufacturers and Traders Trust Company (the Bank) in an attempt to enforce an alleged security interest, obtained in February 1973, in the property of the bankrupt, Ollag Construction Equipment Corp. (Ol-lag). Karl Goldman, trustee of the bankrupt, has consistently maintained that the security is a voidable preference under § 60 of the Bankruptcy Act. At the time of the first appeal, the trustee had so persuaded Bankruptcy Judge Beryl E. McGuire and District Judge John T. Elfvin. This court, however, reversed and remanded the case for further consideration and additional findings. Matter of Ollag Construction Equipment Corp., 578 F.2d 904 (2d Cir. 1978). This direction has been fully fol *44 lowed and the trustee has again been successful, resulting in the appeal now before us. We affirm the judgment of the district court for reasons stated below.
I
Since familiarity with our prior opinion is assumed, we will not once again describe the facts in detail. It is enough for present purposes to note the following: Ollag, an equipment firm, was one of three corporations controlled by four brothers. The other two corporations were Ollag’s parent, Deplan Contracting Inc. (Deplan), a construction firm and Ollag’s principal source of income, and Sheldon Builders Supply Corp. (Sheldon), which owned the real estate on which Deplan and Ollag were located. In the winter of 1972-73, Deplan encountered financial difficulties, causing-concern to its creditors, principally the Bank and The Travelers Indemnity Company (Travelers). Our prior opinion succinctly described both their interest and what then occurred:
Meetings were held to discuss refinancing the stricken business. The principal creditor participants were the Bank and the Traveler’s Indemnity Company (“Travelers”). The Bank held Deplan’s note in the sum of $200,000, collateralized by a security interest in equipment Deplan owned separately from Ollag. It had also obtained a mortgage on Sheldon’s real estate, and payment guaranties from Ol-lag and the Gallos and their wives. Travelers had written performance and payment bonds for Deplan’s projects, and Ollag, Sheldon, and the Gallos had also agreed to indemnify Travelers against liability on these bonds, a fact of which the Bank claims ignorance.
While the discussions continued, the security interest at issue in this case came into being. In February 1973, Leopold Gallo, Ollag’s president, executed at the Bank’s request a chattel mortgage on Ol-lag’s inventory and equipment to serve as security for Ollag’s guaranty of Deplan’s note. The proposed refinancing never occurred.
578 F.2d at 906 (footnotes omitted).
Thereafter, despite Deplan’s efforts, it was adjudicated a bankrupt in early May 1973. Later that month, Travelers filed an involuntary petition in bankruptcy against Ollag, which was adjudicated a bankrupt in June 1973. In the prior appeal, we disposed of the trustee’s attack on the Bank’s security interest based upon state law grounds, but we were unable to rule definitively on the trustee’s claim of voidable preference under § 60. The Bank argued that the trustee had not proved two of the prerequisites of his claim: that Ollag was insolvent when the security interest was given and that the Bank had “reasonable cause” so to believe. Concluding that “there were important factors weighing on the question of Ollag’s insolvency” that had not been considered, we reversed the judgment for the trustee and remanded for specific findings of the value, at the relevant date, of:
(1) Ollag’s physical assets;
(2) Ollag’s right of subrogation to the Bank’s secured claim against Deplan;
(3) Ollag’s rights of contribution against Sheldon and the Gallos as co-guarantors of Deplan’s note to the Bank and co-indemnitors on Travelers’s performance and payment bonds;
(4) Ollag’s expected liability to Travelers under the indemnity agreement covering the performance and payment bonds, assuming that liability is established.
Id. at 909. We also instructed that: [i]f the bankruptcy court determines on remand that Ollag had a negative net worth in February 1973, it should then consider whether, with knowledge of all information available upon diligent inquiry into the Gallo enterprise’s affairs, the Bank would have had reasonable cause to conclude that Ollag was insolvent.
Id.
Thereafter, the bankruptcy judge dutifully complied with this directive, and again found that Ollag was insolvent in February 1973 and that the Bank had reasonable cause to so conclude. The district judge *45 again affirmed the decision of the bankruptcy judge.
On appeal, the Bank argues that the lower courts improperly considered certain financial statements of three Gallo brothers, of which more later, and attacks in a number of other respects the findings that Ollag was insolvent and that the Bank should have been aware of it. Were the latter group of issues the only ones before us, we would simply affirm at this point. We pointed out in our prior opinion that “valuation of contingent assets and liabilities is an arduous task, and on occasions only approximations can be made.” Id. The opinions of the bankruptcy judge and the district judge were careful, thorough and sensible. For example, the bankruptcy judge’s use of liquidation value to measure Ollag’s physical assets was reasonable in view of Deplan’s financial downslide in early 1973, since Ollag’s economic well-being was inextricably linked to Deplan’s. See Mitchell v. Investment Securities Corp., 67 F.2d 669, 671-72 (5th Cir. 1933); cf. Kra-vetz v. Joange Building Corp., 341 F.2d 561, 563 (2d Cir. 1965). Similarly, the valuation of Sheldon’s potential contribution on the Travelers bonds at $7,500 was also justified due to the outstanding liens on Sheldon’s properties. The Bank offered no evidence to suggest that it had been “duped” into settling for approximately $7,500 to release its lien, nor did it present credible evidence that the liquidation sale of Sheldon’s properties was anything but bona fide. Nor was the bankruptcy court’s assessment of Ollag’s potential liability to Travelers at $274,000 clearly erroneous under the circumstances. And on the issue whether the Bank had reasonable cause to know of Ol-lag’s insolvency, Ollag received ninety percent of its business from Deplan; this should have indicated that Ollag would be in dire financial condition upon its parent’s collapse. A further examination of Ollag’s balance sheet would have revealed the Travelers bonds. This finding, like the others, was not clearly erroneous, especially considering that the Bank is in the business of assessing credit. In short, despite the Bank’s claims to the contrary, we find sufficient evidence to justify the findings of the two lower courts on the issues that were the subject of the remand.
II
The Bank’s arguments regarding the bankruptcy court’s evidentiary use of certain financial statements require more extended discussion. The dispute concerns statements of three Gallo brothers, which were furnished to the Bank at its request when it was clear that Deplan was in financial trouble. The parties, including the Bank, were then considering a refinancing “package” that would include new funds to be loaned by the Bank. In accordance with its usual practice, the Bank required the Gallos to submit current financial statements for themselves and their wives and for the three corporations. At the hearing before the bankruptcy judge, the Bank offered the statements in evidence, presumably to show that Ollag could have obtained contributions from the Gallos on Ollag’s guaranty of Deplan’s note to the Bank. The trustee objected on the ground that the statements were inadmissible hearsay because they were not business records prepared by the Bank itself. The Bank then reworded its offer, introducing the statements not for the truth of their contents but rather on the limited issue whether the Bank had reason to believe that Ollag was insolvent.
The record remained in this form until this court reversed the judgment of the district court on the prior appeal. When the case then came before the bankruptcy judge on remand, he held no further eviden-tiary hearing, but after argument and briefing made further findings in accordance with this court’s direction. In the course of his supplemental decision, and despite his “embarrassment” at doing so, the bankruptcy judge reversed his earlier evi-dentiary ruling and considered the contents of the financial statements on the issue of the Gallos’ net worth rather than simply on the issue of the Bank’s knowledge. The district court affirmed this ruling. The Bank now argues to us that the changed *46 evidentiary ruling was unfair and improper and that, in any event, the financial statements were inadmissible hearsay.
These issues are presented in a rather peculiar procedural posture. The Bank apparently first offered these statements for the truth of their contents. It therefore seems somewhat paradoxical for the Bank to impugn their reliability now. The bankruptcy judge ultimately concluded that he had improperly limited the scope of the statements’ relevance. If evidence is improperly excluded, this court can consider it on appeal. F.H. McGraw & Co. v. Milcor Steel Co., 149 F.2d 301, 305-06 (2d Cir.), cert. denied, 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452 (1945). Similarly, under the circumstances here, the bankruptcy judge could change his mind about the relevance of the evidence. The Bank claims, however, that widening the scope of the statements’ relevance without affording the Bank an opportunity to rebut their accuracy was unfair and denied it due process. Yet, during oral argument before the district court, the Bank stated that it did not want to reopen the case to contest the statements’ accuracy. The Bank simply wanted the use of these statements to be limited. Having expressly disclaimed any desire to reopen the case, the Bank can not now claim that failure to do so was unfair or denied it due process.
The Bank also argues that these statements were inadmissible hearsay because they did not qualify as business records under Fed.R.Evid. 803(6). This argument must be rejected. Rule 803(6) “favor[s] the admission of evidence rather than its exclusion if it has any probative value at all.” United States v. Carranco, 551 F.2d 1197, 1200 (10th Cir. 1977). Other circuits have recognized that under Rule 803(6) business records are admissible if witnesses testify that the records are integrated into a company’s records and relied upon in its day-today operations. United States v. Ullrich, 580 F.2d 765, 771-72 (5th Cir. 1978); United States v. Carranco, supra, 551 F.2d at 1200; cf. Braunstein v. Massachusetts Bank & Trust Co., 443 F.2d 1281,1284 (1st Cir. 1971) (pre-Rule 803(6) decision). Testimony here established that the financial statements were on the Bank’s own form, were completed at its request, and were of a type regularly used by the Bank in making decisions whether or not to extend credit. They therefore satisfied the primary requirements of the business records exception to the hearsay rule.
The Bank nevertheless asserts that this court’s decision in United States v. Lieberman, 637 F.2d 95 (2d Cir. 1980), requires that the financial statements be excluded because the Bank did not check their accuracy. Lieberman held that a guest registration card could not be admitted for the truth of its contents when the hotel had not verified the guest’s identity. The guaranties of trustworthiness surrounding hotel guest registration are not as great as those surrounding submission of a financial statement. Moreover, verification of a hotel guest’s identity can be quite easily accomplished by checking his personal identification. Here, by contrast, the furnishing to a bank of false information in financial statements is far more unusual and subject to severe criminal sanctions under federal law. 18 U.S.C. § 1014 (felony punishable by fine of not more than $5,000 or two years in prison or both). Moreover, because verification of financial statements is far more time-consuming, it is essential to ensure their accuracy and reliability through such sanctions. Lieberman is therefore clearly distinguishable, and the absence of verification by the Bank did not render the statements inadmissible.
For similar reasons, we reject the Bank’s claim that even if the statements satisfied the primary requirements of Rule 803(6), they were inadmissible because the circumstances of their preparation indicated un-trustworthiness. As previously noted, the Gallos were subject to criminal sanctions if their statements were false. Moreover, the Bank’s theories about the Gallos’ motives to understate their assets as a means of minimizing personal liability seem highly tenuous. Instead, as the district court properly found, the Gallos were, if anything, likely to overstate their assets in order to obtain *47 refinancing from the Bank. Any overstatement would favor the Bank’s position in this proceeding. Under the circumstances, the district court correctly held that the statements were not inadmissible hearsay.
The judgment of the district court is therefore affirmed.