**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold Dean BEHRENS, James D. Wilkett, James M. Wilkett, and Fred Weed, Defendants-Appellants.**

Nos. 81–1086, 81–1187, 81–1186 and 81–1253.

United States Court of Appeals, Tenth Circuit.

Sept. 9, 1982.

Certiorari Denied Dec. 13, 1982. See 103 S.Ct. 573.

W. David Pardue, Oklahoma City, Okl., for defendant-appellant Harold Dean Behrens.

Gene Stipe of Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, Okl., for defendants-appellants James D. Wilkett and James M. Wilkett.

Jack L. Freeman, Edmond, Okl., for defendant-appellant Fred Weed.

James F. Robinson, Asst. U. S. Atty., Oklahoma City, Okl. (David L. Russell, U. S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

These consolidated appeals follow defendants' convictions for conspiracy to unlawfully distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendants seek reversal of the verdict against them primarily on grounds of prejudicial suppression of evidence by the prosecution, improper evidentiary determinations by the trial judge, and insufficiency of the evidence. We affirm.

## I.

In October 1980, a federal grand jury indicted seven persons for conspiracy to illegally distribute the narcotic Dilaudid. The named defendants included Harold Behrens, Dr. Thomas Conklin, Joe Hoover, Harvey Mize, Fred Weed, James D. Wilkett, and James M. Wilkett. The case against Mize was subsequently dropped by the Government, and the trial court later severed the actions against Conklin and Hoover. The remaining defendants were found guilty following a jury trial.

The facts relevant to this appeal are derived from the testimony of unindicted coconspirators and Government investigators, together with all reasonable inferences to be drawn therefrom, properly reviewed in the light most favorable to the prosecution. *See United States v. Blitstein*, 626 F.2d 774, 776 (10th Cir. 1980). The Wilkett defendants obtained large quantities of Dilaudid through prescriptions written by Dr. Conklin and filled by pharmacist Hoover. The Wilketts then distributed the Dilaudid to defendant Behrens and James Powell, an unindicted coconspirator who was the Government's primary witness. Behrens and Powell resold the drugs for profit.

Bobby Weed, another unindicted coconspirator, frequently purchased Dilaudid from Behrens for illicit resale. Defendant Fred Weed loaned Bobby money for such purchases, directed Bobby to street customers for the drug, and took a percentage of Bobby's profit.

Defendants raise myriad arguments in support of their appeals. Defendant Fred Weed asserts that the indictment is fatally defective. All defendants contend that the Government failed to timely disclose exculpatory material. Defendants James D. Wilkett, James M. Wilkett, and Weed claim the trial judge erred by not adhering to the preferred order of proof vis-a-vis coconspirator hearsay, by not severing their cases from that of defendant Behrens, and by not declaring a mistrial after severing two defendants from the case. Defendants each separately assert various insufficiency of the evidence arguments as grounds for reversal of their convictions. Behrens and the Wilkett defendants also urge that evidence relating to prescriptions for Dilaudid, and the summaries of such evidence prepared by the Government, were erroneously admitted into evidence.

## II.

### A. *The Indictment*

The indictment charges that defendants and the unindicted coconspirators

> "*willfully and knowingly* did conspire, confederate and agree together, with each other and with other persons unknown to the Grand Jury, to violate Title 21, United States Code, Section 841(a)(1), in that they combined, conspired, confederated and agreed to distribute a Schedule II narcotic controlled substance, to wit: Dilaudid, in violation of Title 21, United States Code, Section 846."

Rec., vol. I, at 1 (emphasis added). The substantive offense set out in 21 U.S.C. § 841(a)(1), however, prohibits any person from "knowingly or intentionally" distributing a controlled substance. Relying on *Robinson v. United States*, 263 F.2d 911 (10th Cir. 1959), defendant Weed argues

that the indictment is fatally defective because it does not contain the "knowingly or intentionally" language. We have recently rejected an identical argument. *See United States v. Perry*, No. 81–1011, slip op. at 2–3 (10th Cir. July 6, 1982).

### B. Exculpatory Evidence

Although all defendants made a general request for Brady material, the Government failed to produce prior to trial certain grand jury testimony and police statements containing exculpatory information indicating that Behrens obtained some Dilaudid from Texas. The Government erroneously treated this Brady material as Jencks material, required to be produced at trial rather than pretrial. *See* 18 U.S.C. § 3500(b). All of the material was produced during the course of the trial. Defendants concede the production but claim they were prejudiced by its untimeliness.

The prosecutorial duty to provide defense counsel with exculpatory evidence stems from the Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* prohibits suppression of material evidence favorable to an accused when disclosure is requested by the defense. *Id.* at 87, 83 S.Ct. at 1196. However, the rule applies in situations involving "defendant's discovery, *after trial,* of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (emphasis added). This circuit has previously concluded that *Brady* is not violated when the Brady material is available to defendants during trial. *See United States v. Alberico*, 604 F.2d 1315, 1319 (10th Cir.), *cert. denied* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979).

■■■ We do not condone the Government's conduct in failing to liberally construe *Brady* in accordance with the trial judge's continuing order to do so. Nevertheless, defendants have not demonstrated that the delayed disclosure of evidence deprived them of a fair trial. *See United States v. Jackson*, 579 F.2d 553, 560 (10th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 569,

58 L.Ed.2d 652 (1978). Defendants correctly note that their attorneys' trial strategy and cross-examinations might have been enhanced had the exculpatory material been provided earlier. The relevant standard of materiality, however, does not focus on trial preparation but instead on whether presentation of the evidence would have created a reasonable doubt of guilt that did not otherwise exist. *Agurs*, 427 U.S. at 112 n.20, 96 S.Ct. at 2401 n.20; *Alberico*, 604 F.2d at 1319. No such showing has been made by defendants in this case. Even though Behrens may have obtained some Dilaudid from Texas, there was abundant evidence that Stigler, Oklahoma was the source of a great deal of the Dilaudid that was distributed.

### C. Preferred Order of Proof

■■■ Statements made by one member of a conspiracy are admissible evidence against coconspirators under certain circumstances. *See* Fed.R.Evid. 801(d)(2)(E). Such material is properly admitted evidence so long as the trial judge specifically determines that the Government has independently established

> "it is more likely than not that (1) the conspiracy existed; (2) the declarant and the defendant against whom the conspirator's statement is offered were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the objects of the conspiracy."

*United States v. Petersen*, 611 F.2d 1313, 1330 (10th Cir. 1979) *cert. denied* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). *See also United States v. Radeker*, 664 F.2d 242 (10th Cir. 1981); *United States v. Stipe*, 653 F.2d 446, 449 (10th Cir. 1981); *United States v. Andrews*, 585 F.2d 961, 966 (10th Cir. 1978). It is preferable for the Government to independently establish the conspiracy and the defendants' connection with it before introducing incriminating declarations of coconspirators. *Petersen*, 611 F.2d at 1330; *Stipe*, 653 F.2d at 449. This preferred order of proof should be adhered to absent "some substantial reason." *United States v. Calabrese*, 645 F.2d 1379, 1387 (10th Cir.), *cert.*

*denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

Defendants Fred Weed and the Wilketts contend that the trial judge unjustifiably departed from this preferred order of proof without making the requisite independent evidence determination. A careful review of the trial proceedings undermines this assertion.

The record reveals that the trial judge scrupulously adhered to the preferred order of proof, requiring the Government to present nonhearsay evidence of a conspiracy and the involvement of each defendant. Coconspirator hearsay was introduced only after the judge announced that the requirement's safeguards had been substantially realized and that the trial had reached a point where continued application of the rule was not feasible. The court specifically found that departure from the preferred order "would facilitate the trial, without unfairness to the defendants, and with less confusion to the jury ...." Rec., vol. IX, at 518–19.

Prior to this departure from the preferred order of proof, independent evidence established that: (1) the Wilkett defendants sold Dilaudid on a number of occasions to Behrens and to James Powell for resale; (2) Powell and Behrens split the Dilaudid between them and sold it in the Oklahoma City area at a profit; (3) Bobby Weed purchased Dilaudid from Behrens in the presence of and using money provided by defendant Fred Weed; and (4) Bobby Weed also shared proceeds from Dilaudid "street sales" with Fred Weed. Based upon this independent evidence, the trial judge subsequently made the findings mandated by *Andrews, Petersen,* and their progeny. The treatment of coconspirator hearsay in this case was entirely proper.

### D. *Severance*

Criminal defendants engaging in the "same series of acts or transactions constituting an offense" can be charged in a single indictment and tried jointly. Fed.R. Crim.Proc. 8(b); *Petersen*, 611 F.2d at 1331. Where prejudice to a particular defendant results from such joinder, the trial judge possesses discretion to sever the action. Fed.R.Crim.Proc. 14; *see also United States v. Bridwell*, 583 F.2d 1135, 1142 (10th Cir. 1978). The trial judge must balance the prejudice to a particular defendant against the interests of judicial economy when evaluating a severance motion. *See Petersen*, 611 F.2d at 1331. The judge's decision on severance matters will not be disturbed on appeal absent an abuse of discretion. *Id.; see also United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir. 1980), *cert. denied*, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981). Such abuse exists when denial of severance deprives an individual of his right to a fair trial. *See United States v. Butler*, 494 F.2d 1246, 1256 (10th Cir. 1974).

Defendants Weed and the Wilketts assert that their joinder with defendant Behrens deprived them of a fair trial. Behrens was charged in a triple murder at the time this conspiracy case commenced. Defendants claim that under these circumstances mere trial association with Behrens constituted prejudice sufficient to mandate severance, and that joinder hampered their ability to introduce allegedly exculpatory material.

The trial judge treated this sensitive issue with caution. Exhaustive voir dire purged the jury box of all knowledge of Behren's involvement in the homicides. The trial judge then preserved this integrity by prohibiting all references to the triple slayings during trial. We conclude that the trial court's decision to deny the motion for severance was not an abuse of discretion.

### E. *Insufficient Evidence*

Defendants make various arguments as to insufficiency of the evidence. We have carefully reviewed the record and we are not persuaded by defendants' contentions.

#### 1. The Wilketts

The Wilketts argue there is insufficient evidence that only two conspiracies existed. They say the evidence shows the following three conspiracies in addition to the conspiracy of James D. Wilkett, Conklin, and Hoo-

ver to use Dilaudid on race-horses, which conspiracy the trial judge recognized as separate and severed from the trial:

(1) one conspiracy between James M. Wilkett and Powell from June into September 1979, which ended when James M. Wilkett stopped selling Dilaudid to Powell;

(2) a separate conspiracy between James D. Wilkett, Powell, and Behrens that began when James D. Wilkett started selling Dilaudid;

(3) a separate conspiracy between Powell, Behrens, Fred Weed, Bob Weed, and the other unindicted coconspirators to sell Dilaudid in the Oklahoma City area.

The judge, however, concluded that all this activity constituted one conspiracy to sell Dilaudid illegally for resale on the street.

We have recognized on a number of occasions that "the conviction of a coconspirator may be sustained upon a sufficient showing of the essential nature of the plan and the individual's connection with it. It is not necessary that each member of the conspiracy know all of the details or be acquainted with all of the parties to the illegal scheme, as long as he is aware of its general scope." *United States v. Johnson,* 645 F.2d 865, 868 n.2 (10th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981). *See, e.g., United States v. Parnell,* 581 F.2d 1374, 1382 (10th Cir. 1978), *cert. denied,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979); *see also Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). The existence of a number of separate transactions does not require the finding of separate conspiracies. *See United States v. Brewer,* 630 F.2d 795, 799 (10th Cir. 1980); *Parnell,* 581 F.2d at 1382. "Where large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know." *Brewer,* 630 F.2d at 800 (quoting *United States v. Watson,* 594 F.2d 1330, 1340 (10th Cir. 1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d

51 (1980)). The same is true of major suppliers.

Reading the record in the light most favorable to the Government and drawing inferences in its favor as we must, we believe the evidence supports the existence of a single conspiracy. Dr. Conklin prescribed a total of 14,000 Dilaudid in quantities of 100 to "James Wilkett," and to James D. Wilketts' brother, father, and two of his employees from March 1979 to June 1980. The prescriptions were filled by pharmacist Hoover. James D. Wilkett admitted to Drug Enforcement Agent Beck that he had received all of the Dilaudid from all of the prescriptions. James M. Wilkett sold 100 tablets of Dilaudid to James Powell in June 1979 and again on six or eight occasions over the next two months. Behrens participated in the purchase from James M. Wilkett in August 1979. Although there is no evidence that James M. Wilkett knew the Weeds and others in Oklahoma City were purchasing the Dilaudid from Powell and Behrens, it is a reasonable inference from the quantities sold that James M. knew the drug was purchased for resale. *See Watson,* 594 F.2d at 1340.

James M. Wilkett quit selling Dilaudid to Powell during September 1979. However, "[t]hat '[s]ome of the participants remained with the enterprise from its inception until it was brought to an end, and others joined or left the scheme as it went along,' is of no consequence if each knew he was part of a larger ongoing conspiracy." *Brewer,* 630 F.2d at 800 (quoting *Parnell,* 581 F.2d at 1382). When he quit selling the Dilaudid, James M. gave Powell the telephone number of his father, James D. Wilkett. Thereafter, Powell and Behrens purchased Dilaudid from James D. It is a reasonable inference from the record that James M. obtained the Dilaudid he sold from his father, that he knew the Dilaudid was subsequently resold by Powell and Behrens for street use, and that he gave out his father's phone number knowing and intending that the illegal drug distribution conspiracy would continue, which it did. While the evidence

linking James M. to the Oklahoma City distribution of Dilaudid is not ample, it is sufficient under our prior case law.[1] Without detailing it here, the evidence and reasonable inferences as to James D. Wilkett's participation in one single conspiracy to unlawfully sell Dilaudid for resale is not only ample, it is abundant. We conclude there was sufficient evidence of a single conspiracy.

### 2. Behrens

Defendant Behrens, forced to concede that three witnesses firmly linked him to the conspiracy, asserts the testimony against him is inadequate on grounds of inherent incredibility. Behrens contends that the witnesses implicating him are legally unreliable because of their drug abuse, citing *United States v. Butler*, 481 F.2d 531 (D.C.Cir.1973), and *Jackson v. United States*, 353 F.2d 862 (D.C.Cir.1965). However, defendant's case authorities on this point present very different facts from the case at bar. The jury here was properly instructed to consider the testimony of these witnesses with care. It is not this Court's function to weigh the credibility of witnesses on appeal, and we decline to do so here. *See United States v. Gibbons*, 607 F.2d 1320, 1329 (10th Cir. 1979); *Watson*, 594 F.2d at 1339.

### 3. Weed

Defendant Weed mistakenly suggests that his conviction is infirm because it is based solely on the uncorroborated testimony of an accomplice. Convictions may be founded on such testimony so long as the trial judge instructs the jury that the accomplice testimony is to be carefully scrutinized. *United States v. Hill*, 627 F.2d 1052 (10th Cir. 1980). The judge so instructed the jury in this case.

### F. Summary Evidence

Defendants Behrens and both Wilketts contend that the introduction of a summary evidence chart was without proper foundation and prejudicial. The chart outlined the Dilaudid prescriptions written by Dr. Conklin and filled by pharmacist Hoover.

Evidentiary summaries are permissible where a case involves "voluminous writings . . . which cannot be conveniently examined in court . . . ." Fed.R.Evid. 1006. A proper foundation for such a summary can be laid through the testimony of the witness who supervised preparation of the exhibit. *See United States v. Scales*, 594 F.2d 558, 563 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979).

The authenticity of the prescriptions summarized by the chart was adequately established. *See generally United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir.1981). Drug Enforcement Administration Agent Beck, who prepared the chart, testified that: (1) he personally served Hoover with an administrative search warrant seeking the Dilaudid prescriptions; (2) Hoover identified his files containing prescriptions for schedule II narcotics; (3) Beck reviewed the prescriptions and took out those pertaining to Dilaudid; (4) the Dilaudid prescriptions were prescribed by Dr. Conklin; (5) a number of the prescriptions were made out to James Wilkett, Wilkett family members, and employees of James D. Wilkett; and (6) James D. Wilkett subsequently admitted he had received all the Dilaudids from all the prescriptions. Beck's testimony critical to authentication was neither inadmissible nor undermined by the subsequent severance of actions against Conklin and Hoover.

We also reject defendants' claim that the chart size was prejudicial. The purpose of the chart was to aid the jury in organizing the evidence, and the summary

---

1. James M. Wilkett also contends there is no evidence linking him to the Western District of Oklahoma for venue purposes. Given our conclusions on the existence of one conspiracy, his argument is without merit. There is abundant evidence of overt acts in the Western District by Powell, Behrens, the Weeds, and other unindicted coconspirators. *See United States v. Petersen*, 611 F.2d at 1333.

accurately reflected the underlying prescriptions. *See generally United States v. Seelig*, 622 F.2d 207, 214 (6th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980). "Size alone does not render inadmissible an exhibit containing otherwise unobjectionable objective evidence." *Scales*, 594 F.2d 563.

"The determination of the adequacy of the foundation for the admission of evidence, and the admission or rejection of evidence is left to the discretion of the trial court." *United States v. Carranco*, 551 F.2d 1197, 1199–2000 (10th Cir. 1977). There being no clear abuse of discretion, we affirm the evidentiary ruling at issue.

### G. *Mistrial Request*

Defendants Weed and the Wilketts assert that a mistrial was required once Dr. Thomas Conklin and pharmacist Joe Hoover were severed from the case. Defendants maintain they sustained substantial prejudice through the spillover effect of Agent Steve Beck's hearsay testimony relating to Conklin and Hoover.

 Beck's testimony can be divided into two categories. His statements directed to the *actions* of Conklin and Hoover in his presence were clearly admissible and unaffected by the subsequent severance. *See Andrews*, 585 F.2d at 965. Beck's testimony as to the *remarks* of Conklin and Hoover, however, constituted hearsay rendered inadmissible by the severance.

"Whether a motion for mistrial should be granted is within the discretion of the trial judge because he is in the best position to evaluate the effect of the offending evidence on the jury." *United States v. Laymon*, 621 F.2d 1051, 1053 (10th Cir. 1980). We have reviewed the entire record and conclude that the trial court did not abuse its discretion in denying the mistrial motion. Significantly, neither Fred Weed nor James M. Wilkett were mentioned in the Conklin-Hoover statements testified to by Beck. James D. Wilkett was identified by agent Beck as the recipient of the Conklin-Hoover Dilaudid largesse. This problem was vitiated substantially, however, by James D. Wilkett's ultimate admission that he received the drugs, although he denied selling them to Powell and Behrens.

As we have shown above, there is ample evidence independent of the Conklin-Hoover hearsay to establish beyond a reasonable doubt the source of the Dilaudid and its illegal sale. Under these circumstances, and in view of the trial court's instruction to the jury to disregard the inadmissible hearsay, the motion for mistrial was properly denied.

### III.

We have carefully examined defendants' remaining arguments for reversal and find them unpersuasive.

JUDGMENT AFFIRMED.