**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carl FIELDING, Defendant-Appellant.**

No. 79–1793.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 1, 1980.

Decided May 18, 1981.

Donald M. Currie, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Thomas W. Hillier, II, Seattle, Wash., for defendant-appellant.

Before ELY and NELSON, Circuit Judges, and KARLTON,* District Judge.

PER CURIAM:

The Petition for Rehearing is denied. Various arguments we have received, however, lead us to modify our discussion of the issues in this case. Accordingly, the opinion of October 23, 1980, reported at 630 F.2d 1357 (9th Cir. 1980), is withdrawn and the following opinion is substituted.

## INTRODUCTION

Appellant Fielding was indicted on July 15, 1975, for (1) importation into the United States of an unspecified amount of marijuana "on or about September, 1974," 21 U.S.C. §§ 812, 952, 960(a)(1), (b)(2); 18 U.S.C. § 2; and (2) conspiracy, with four others, "beginning on or about September, 1973, and continuing through on or about September, 1974," to import marijuana with the intent to distribute in violation of 21 U.S.C. §§ 846, 953. Fielding was not arrested until April, 1979, when he was returned from Lima, Peru. After an initial trial continuance, he was tried in August, 1979, and found guilty on both counts.

---

* The Honorable Lawrence K. Karlton, United States District Judge, Eastern District of California, sitting by designation.

1. In view of our resolution of this case, it is unnecessary to discuss these remaining issues.

Appellant raises four contentions on appeal:

1. A one-month continuance violated the Speedy Trial Act;

2. United States complicity in his detention and torture by Peruvian police required dismissal of the indictment;

3. The admission of hearsay declarations of alleged coconspirators violated both the hearsay rule and the Sixth Amendment Confrontation Clause; and

4. Other items of evidence were improperly admitted.[1]

The case involved a smuggling scheme that utilized the ship *Osprey* to import marijuana. Appellant allegedly handled stateside operations while other coconspirators ran the actual importation activities. The Government's case consisted primarily of the testimony of Richard Lotz, one of the operators of the ship, David Wagner,[2] and DEA Special Agent Dixon McClary. The latter two witnesses' testimony recounted declarations allegedly made to them by Robert and Rafael Flores, two alleged coconspirators. Additional facts pertinent to the decision are reported in the body of this opinion. As we explain, the judgment of conviction must be reversed because the introduction of the Floreses' declarations violated the hearsay rule.[3]

## I

## SPEEDY TRIAL ACT CLAIM

Appellant was arraigned on May 30, 1979. On July 16, 1979, the scheduled day of trial, the court granted the Government's request for a one-month continuance and made a written finding that the continued time was excludable under the "ends of justice" exclusion of the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(A). Appellant argues that the continuance was not justified and that the

---

2. Wagner is a private citizen guilty of unrelated crimes who, in order to minimize the consequences of being caught, agreed to incriminate and testify against other alleged wrongdoers.

3. We need not address appellant's Confrontation Clause argument. *See* note 16 *infra*.

delay of his trial attendant to the granting of the motion resulted in a violation of the Speedy Trial Act (by not bringing defendant to trial within the statutory period) which required the sanction of dismissal. *See* 18 U.S.C. § 3162.[4]

Initially, the issue of the applicability of the sanction provisions is raised. Under the original Speedy Trial Act, the sanction provisions became "effective after the date of expiration of the fourth twelve-calendar-month period following July 1, 1975." Speedy Trial Act of 1974, Pub.L. No. 93–619, ch. 208, § 3163(c), 88 Stat. 2080 (current version at 18 U.S.C. § 3163(c)). In other words, sanctions were not applicable until July 1, 1979. *See United States v. Cordova*, 537 F.2d 1073, 1075 n.1 (9th Cir. 1976); *United States v. Noll*, 600 F.2d 1123 (5th Cir. 1979). The Act was amended on August 2, 1979, to provide that the sanction provisions would become "effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980." Speedy Trial Act Amendments of 1979, Pub.L.No. 96–43, § 6, 93 Stat. 328, *amending* 18 U.S.C. § 3163(c).

Appellant was indicted and arraigned *prior* to July 1, 1979, and, as noted, the continuance in question was granted July 16, 1979. Thus, this case comes within the "one month gap" between the applicability of sanctions under the unamended Act, and the suspension of sanctions by the new Act.[5]

Whether Congress could constitutionally deprive a defendant of a procedural benefit retroactively is uncertain. *See Hamm v. Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964). We need not reach this issue because, even assuming *arguendo* the applicability of the dismissal sanction, the

continuance did not violate the requirements of the Act.

■ Both parties assume that the appropriate standard of review of the District Court's action is an abuse of discretion standard, citing cases where a defendant's motion for a continuance was denied. *See, e. g., United States v. West*, 607 F.2d 300, 305 (9th Cir. 1979) (per curiam) ("The granting or denial of a continuance is a matter wholly within the discretion of the trial court which will not be disturbed on appeal unless that discretion is clearly abused."); *United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir. 1978). These cases do not address the standard of review for exclusions of time under the Speedy Trial Act, but concern defense contentions that denial of a continuance deprived the defendants of an opportunity to prepare effectively for trial.

While the cases have not specifically discussed the applicable standard of review, it appears to us that the appropriate standard is not hard to discern. In applying the exclusions under the Act, the trial judge resolves both legal and factual issues. Thus the scope of appellate review is dependent upon whether the challenged determination is legal, factual, or both. For instance, for the excludable time sections applicable in the present case, the trial judge is barred from considering certain factors (*e. g.*, a crowded docket), and required to consider other factors. *See* 18 U.S.C. § 3161(h)(8)(A).[6] Failure to consider factors which the Act requires to be considered, or consideration of factors which the Act excludes from consideration, would be an action contrary to law and normally reversible error. No such claim is made in the present case. In considering the appli-

**4.** Appellant does not argue that the continuance violated his constitutional right to a speedy trial, *see Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), or that there was a violation of a District Plan for Prompt Disposition of Criminal Cases. *See* Fed.R.Crim.P. 50(b); *United States v. Noll*, 600 F.2d 1123, 1126–27 (5th Cir. 1979).

**5.** *Cf. United States v. De Jesus Moran-Rojo*, 478 F.Supp. 512 (N.D.Ill.1979) (alleged Speedy

Trial Act violation occurred *after* the effective date of the 1979 amendments; dismissal sanction held not to apply).

**6.** Appellant suggests that the standards of subsection (h)(3)(A), relating to unavailable witnesses, apply. *See* text accompanying note 9 *infra*. That section also prescribes the factors to be considered by the trial judge and is thus susceptible to the same analysis.

cable factors, however, the trial judge is also required to make *factual* findings. Under subsection (h)(3)(A), the findings would concern the unavailability of a witness, due diligence, etc. Under subsection (h)(8)(A), the judge must explicitly set forth his reasons for finding that the ends of justice served by the continuance outweigh other interests protected by the Act. Under normal standards of review, such a factual finding should not be disturbed unless "clearly erroneous." *See* Fed.R.Civ.P. 52(a).

█ A review of the transcript reveals a lengthy and searching inquiry by the trial judge as to the proprietary of the requested continuance. At the hearing, the following facts were disclosed: (1) four years had passed since the indictment was handed down (appellant was a fugitive during this period); (2) initial attempts to locate witnesses began in early May, 1979, and the United States had trouble locating these witnesses after four years. Subpoenas were actually issued on June 19, 1979, when the Government believed it could locate the witnesses, although even then the witnesses' current addresses were unknown. Material witness warrants were issued on July 11, 1979. At the time of the hearing only one of the witnesses (Lotz) had been located. That witness was represented by counsel and was hostile and unwilling to talk to the United States Attorney. The United States Attorney stated that the testimony of his informer alone was not sufficient because he was not a percipient witness.[7]

The court granted the motion for a thirty day continuance and later signed an order prepared by the United States Attorney which cited the ends of justice exclusion, 18 U.S.C. § 3161(h)(8)(A), and found: "(1) The Government, despite the exercise of due diligence, has been unable to determine the whereabouts of three essential witnesses . . . (2) Failure to grant the requested continuance would be likely to result in a miscarriage of justice. (3) Therefore, the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. . . ."[8]

Appellant does not argue that a section 3161(h)(8) exclusion and finding were inappropriate, but argues that the standard for such a continuance, if based upon the unavailability of a witness, must be measured by subsection (h)(3).[9]

7. Appellant argues that the prosecutor's statement "I think we could make our case with the testimony of Mr. Lotz" indicates that the continuance was not essential. Yet the next statement of the United States Attorney was that Mr. Lotz was "not willing to talk to me about the facts of this case." Given the fact that Lotz was a hostile witness who might rely upon the Fifth Amendment privilege against self-incrimination, and that the testimony of the informer would not be sufficient, appellant's reliance upon this passage seems misplaced.

8. 18 U.S.C. § 3161(h)(8) excludes, in relevant part:

(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

(B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice. . . .

9. 18 U.S.C. § 3161(H)(3) defines excusable delay to include:

(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.

(B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when his *whereabouts are unknown* and, in addition, he is *attempting to avoid apprehension* or prosecution or his *whereabouts cannot be*

Even if the standards of subsection (h)(3) apply, however, the record clearly indicates that *this* standard was in fact cited and relied upon at the hearing. Furthermore, under section 3162(a)(2), in any motion to dismiss, defendant bears the burden of proof, although the Government has the burden of going forward in connection with a section 3161(h)(3) exclusion. The Government came forward with a showing of necessity and unavailability; neither was rebutted by appellant. Accordingly, appellant's first argument must fall.

## II

## TOSCANINO OBJECTION

█ Appellant argues that the trial judge should have dismissed the indictment because of the alleged complicity of the United States in his torture and kidnapping in Peru. *See United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974); *see generally* Annot., 28 A.L.R.Fed. 685 (1976). Appellant does not argue that any evidence was illegally seized; rather, he argues that the indictment should have been dismissed because of police conduct "shocking to the conscience."

*Toscanino* certainly did involve conduct shocking to the conscience. In that case, defendant had offered to prove direct complicity by United States agents in the forcible kidnapping, torture, and illegal extradition of defendant. The *Toscanino* court found that the case fit within an exception to the *Ker-Frisbie* doctrine,[10] which otherwise bars inquiry into the manner by which a defendant arrives in the court's jurisdiction. The court held that where Government conduct results in a deliberate, unnecessary, and unreasonable invasion of the accused's constitutional rights, *see Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951), dismissal of the indictment is appropriate. 500 F.2d at 275.

In the Second Circuit itself, the reach of *Toscanino* has been limited. In *United States ex rel. Lujan v. Gengler,* 510 F.2d 62 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975), the court reaffirmed the applicability of the *Ker-Frisbie* doctrine except in situations involving Government conduct "of a most shocking and outrageous character." *Id.* at 65. Thus, it held that even an illegal abduction did not necessarily amount to a due process violation, especially where there was no showing that the United States was involved in the original arrest and detention. In sum, "Lujan charges no deprivation greater than that which he would have endured through lawful extradition." *Id.* at 66. *See also United States v. Lira,* 515 F.2d 68 (2d Cir.), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975).

The Ninth Circuit has not had occasion to apply the *Toscanino* rule. In *United States v. Lovato,* 520 F.2d 1270 (9th Cir.) (per curiam), *cert. denied,* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975), we determined that no *Toscanino* showing had been made. At most, in that case, the defendant had established that he had been forcibly expelled from Mexico into the arms of the United States officers. The *Ker-Frisbie* doctrine squarely applied. *Id.* at 1271. We explained that the *Toscanino* case, as limited by *Lujan,* provided that the *Ker-Frisbie* doctrine applied unless the defendant "makes a strong showing of grossly cruel and unusual barbarities inflicted upon him *by persons who can be characterized as paid agents of the United States.*" *Id.* (citations omitted) (emphasis added).

Appellant in the present case has made no such showing. His attempts to connect federal agents to the Peruvian mistreatment were at best ephemeral, and were contradicted by the agent in place. The

---

determined by due diligence. For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

(Emphasis added.)

10. *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886).

District Court explained that although the treatment in the Peruvian jail was outrageous "there is no showing whatsoever that the United States participated in any of that conduct, and while there is some question about whether the Embassy representatives were advised by Mr. Fielding of it while he was there, there is no showing that they failed to do what could be done, if anything, to alleviate those conditions." The District Court was presented with a threshold factual issue which it resolved adversely to appellant. That resolution is not clearly erroneous.

### III

### HEARSAY CLAIM

◼ Fielding also appeals the admission of the testimony of David Wagner and Special Agent McClary insofar as it consisted of the repetition of out-of-court statements of alleged coconspirators. He argues that these statements were inadmissible hearsay because they were not "in furtherance of" the conspiracy charged as required by Fed. R.Evid. 801(d)(2)(E), and denied him his Sixth Amendment Confrontation Clause rights.

#### A. *Facts*

The indictment charged appellant Fielding, Robert ("Bobby") Flores, Rafael Flores, Joseph Crooks, and William Nicholai with importation of marijuana on or about September, 1974. Count II charged a conspiracy among the same persons to import with intent to distribute marijuana from September, 1973, to September, 1974.

Aside from custodial witnesses, the Government's case rested upon the testimony of five persons. David and Steven Meyer testified about the travels of the *Osprey*, the ship used in the importation scheme. Their testimony did not specifically implicate appellant. Richard Lotz testified in detail about the importation operation. Lotz maintained that he mainly reported to and heard from Crooks and that Fielding was not mentioned as a participant by the other coconspirators during the voyage.

Lotz did testify concerning two meetings which to some degree inculpate Fielding. In late 1973, at Crooks' behest Lotz attended a meeting among the other coconspirators that Fielding also attended. Marijuana importation was the topic of conversation although "this was a bit of a social gathering as well." The meeting was at Crooks' home. Crooks explained that "they" were looking for someone with sailing ability ["they" were not identified]. Lotz may have talked to Fielding [but he wasn't "absolutely sure"], about remuneration for "sailing." At that time, importation was "just an idea." Lotz in fact went to work on the *Osprey* during the conspiracy. The second meeting followed Lotz's arrest. He approached Fielding seeking reimbursement for his work on the ship. Lotz did not feel Fielding owed him money, but hoped he would help him. Fielding did give him some money.

The balance of the inculpating evidence came from the testimony of David Wagner and Dixon McClary. That testimony consisted almost entirely of out-of-court statements made to them by the alleged coconspirators Bobby and Rafael Flores.

David Wagner met Fielding only once and was unsuccessful in eliciting any incriminating statements from him. Subsequently, Wagner met the Floreses in Los Angeles and, introducing himself as a big dealer, told them that he was interested "in doing the scam just like the one Carl [the appellant] was engaged in." The main source of Wagner's testimony was Bobby Flores, a twenty-year-old "loader" for the *Osprey*. Wagner testified that Flores tried to impress him with his ability to deliver.

At this first meeting Wagner attempted to initiate a new transaction, but was told that there was trouble with appellant because he had not paid Bobby some $68,000 from an earlier trip which had been undertaken during the course of the conspiracy. Wagner offered his assistance, which was accepted, in collecting the debt. "They were trying to get paid, trying to find Carl ... or anything along those lines."

Q: And the purpose of for which you were asked to do this was what?

A: Because ostensibly I would be buying marijuana from them in Mexico in the future and doing the trip with sailboats.

Q: And what was their purpose in asking you to help them?

A: They were having troubles with Carl and needed any corollary assistance I could give them.

The Floreses and Wagner went to Seattle and, at the airport, met Agent McClary. During this period, Wagner testified, Bobby Flores spoke generally about the conspiracy; a lot of his comments "were narrations of things that they had done in the past." Flores' statements connected appellant to the conspiracy. Bobby "didn't like the way Carl dealt, he didn't like having to be on the dole and coming up to Seattle for a few thousand dollars all the time."

Dixon McClary, a special agent for the Drug Enforcement Administration, met Wagner and the Floreses at the Seattle Airport. He too testified as to the airport conversations. He noted that the Floreses were there "to settle a financial dispute that they had with Carl Fielding." The Floreses came with two other persons enlisted as "muscle" and were planning to use physical force against appellant. McClary and Wagner talked them out of the use of force and refused to provide them with a machete.

Despite an ambiguous, seemingly contrary statement made by the Government during oral argument, the parties agree, and the record clearly reflects, that both Bobby and Rafael Flores, Mexican nationals, had been deported following Rafael's arrest and Bobby's conviction and release from prison. Hence they were not available as trial witnesses and did not testify at appellant's trial.[11]

Over objections the trial judge allowed the testimony of Wagner and McClary, indicating that since the discussions with the Floreses took place prior to the arrival of the *Osprey* on its last trip and related to payment for an earlier trip which was encompassed by the charged conspiracy, the statements were "in furtherance of" the conspiracy and did not violate the Confrontation Clause. The judge made no explicit findings concerning either the hearsay issue or the confrontation issue.

### B. Coconspirator Exception

Federal Rule of Evidence 801(d) provides that: "[A] statement is not hearsay if . . . (2) The statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." As noted, appellant challenges the admission of the out-of-court declarations of the Floreses as reported by witnesses Wagner and McClary. The prosecution argued below, and argues here, that these statements were admissible solely under Rule 801(d)(2)(E).

Relative to his hearsay objection, appellant does not argue that the requisite independent proof of the conspiracy, or of appellant's connection to the conspiracy is absent. *See, e. g., United States v. Weiner,* 578 F.2d 757, 768–69 (9th Cir.) (per curiam), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); *United States v. Wood,* 550 F.2d 435, 441 (9th Cir. 1976); *see United States v. King,* 552 F.2d 833, 848–49 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). He argues only that the "in furtherance" requirement of 801(d)(2)(E) was not satisfied.[12] Unfortunately, the Government cites conspiracy cases indiscriminately, often relying on cases that focus on the former issues and not the latter.

This court has spoken several times in recent years on the "in furtherance" requirement. In *United States v. Moore,* 522 F.2d 1068 (9th Cir. 1975), *cert. denied,* 423

---

11. Appellant does not argue that the Floreses' absence was purposely procured by the Government. *See California v. Green,* 399 U.S. 149, 166, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489 (1970); *Canal Zone v. P. (Pinto),* 590 F.2d 1344, 1352 (5th Cir. 1979).

12. *But see* note 13 *infra* (predicate bears on evidentiary reliability and, hence, on the applicability of Rule 801(d)(2)(E)).

U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976), we emphasized that the "in furtherance of" requirement remained "viable, and we believe that this is as it should be. 'The agency theory of conspiracy is at best a fiction and ought not to serve as a basis for admissibility beyond that already established.' Advisory Committee's Note to Proposed Fed.R.Ev[id]. 801(d)(2)(E)." *Id.* at 1077 n.5. In *Moore* we rejected an 801(d)(2)(E) finding because there was nothing in the record to support a conclusion that by declarant's making of the statement, he "was seeking to induce [the witness] to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objectives.... Rather, the statement was, at best, nothing more than [the declarant's] casual admission of culpability to someone he had individually decided to trust." *Id.* at 1077 (citations omitted).

More recently, in *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979) (per curiam), we discussed the "in furtherance of" requirement at length. In that case the defendant was charged with conspiracy to distribute heroin. The prosecution's star witness, Gloria Baca, testified at length as to conversations she had overheard between the conspirators and her coconspirator husband, as well as what her husband has told her concerning the conspiracy. She ultimately became a "passive" member of the conspiracy. *Id.* at 518.

In discussing the coconspirator exception, we first noted that Rule 801(d)(2)(E) requires a foundation to be laid to show that (1) the declaration was in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the defendant's connection with the conspiracy. *Id.* at 519. *See United States v. Weiner*, 578 F.2d 757, 768 (9th Cir.) (per curiam), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). "Sufficient evidence had to exist to support an inference that the statements were made in furtherance of the conspiracy, while the conspiracy was in existence...." *Eubanks*, 591 F.2d at 519.[13]

■ We then delineated types of statements that are not in furtherance: Confessions or admissions of a coconspirator, "mere conversation between conspirators" or "merely narrative declarations." Such statements are not admissible since they cannot meet the condition for admissibility which is that the statements "must further the *common objectives* of the conspiracy." *Id.* at 520 (emphasis added).

The *Eubanks* court's examination of the challenged declarations demonstrates the distinction. Orders from one conspirator to the other to stop using heroin so that he could be "cleaned up" enough to distribute the drug, or the actual negotiation of a sale, "furthered the objectives of the alleged conspiracy because *they set in motion transactions that were an integral part of the heroin distribution scheme.*" *Id.* (emphasis added). Accordingly, such statements were admissible. On the other hand, statements by the witness' husband concerning the activities of the conspiracy, including future plans, were not in furtherance of the conspiracy since he "was not seeking to induce [the witness] to join the conspiracy and his

---

13. While we believe that there was "sufficient, substantial evidence to establish a prima facie case that the conspiracy existed," *see United States v. Weiner*, 578 F.2d 757, 768 (9th Cir.) (per curiam), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978), the only direct evidence linking appellant to this conspiracy was the testimony of Wagner and McClary reciting the Floreses' statements implicating appellant. For example, Lotz was unable, at trial, to positively identify Fielding as the "Carl" he had met at various encounters in 1974. *Cf. id.* at 769 ("Once the existence of a conspiracy has been established, independent evidence is necessary to show prima facie the defendant's connection with the conspiracy, even if the connection is slight."); *United States v. Dunn*, 564 F.2d 348, 356–57 (9th Cir. 1977) (sufficiency of evidence context). This tenuous evidentiary predicate, though not legally insufficient, *see United States v. Griffin*, 434 F.2d 978, 983–84 (9th Cir. 1971), is an additional factor supporting our conclusion that the special guarantee of reliability presumed to inhere in proper Rule 801(d)(2)(E) situations is absent in the factual *gestalt* of this case. *See note 15 infra.*

statement[s] did not assist the conspirators in achieving their objectives." *Id.* When the witness' husband informed her about persons he had spoken to he "was merely informing his common-law wife about his activities" and, accordingly, such statements were inadmissible as against other coconspirators. Later, the witness did assume a role in the conspiracy, but participation in the conspiracy "did not [retroactively] convert [the] statements ... into declarations in furtherance of the conspiracy." *Id.* Therefore, these statements were admitted in error.

Under these standards, the admission of the statements in the present case was erroneous. As defined in the indictment, the existing conspiracy was a conspiracy to import marijuana with intent to distribute it from the period of September, 1973 to September, 1974. General statements made by Flores to Wagner concerning his business relationship with Fielding in no way advanced *that* conspiracy. As Wagner admitted, Flores was trying to impress him in order to facilitate a *new* deal involving a new conspiracy that did not include appellant. Thus, the disputed statements were not "in furtherance of" the charged conspiracy and could not have been admitted under Rule 801(d)(2)(E) on that basis.

■ *United States v. Haldeman,* 559 F.2d 31, 111 (D.C.Cir.1976) (en banc) (per curiam), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) is not to the contrary. When, as in *Haldeman,* the central purpose of the underlying conspiracy is the formulation of future strategies of concealment, narrations of past events that would otherwise be inadmissible [14] are "in furtherance of" the continuing, ongoing conspiracy. *See id.* at 110–11; *Zamloch v. United States,* 193 F.2d 889, 890–91 (9th Cir. 1952). In *Haldeman,* the D.C. Circuit upheld the admission *against* Mitchell of hearsay declarations of coconspirators considering, in his absence, plans to make Mitchell the "fall guy" as "in furtherance of" the "single and continuing conspiracy of which Mitchell was a member." 559 F.2d at 111 n.219. In contrast to *Haldeman,* in which Mitchell was to be given veiled assurances of clemency if he complied and, "most important, ... remained a loyal member of the conspiracy," *id.,* the conspiracy in the case *sub judice* had degenerated into after-the-fact internecine quarrels and beliefs of betrayal. The Floreses' statements to Wagner and McClary were not, in these circumstances, "in furtherance of" the smuggling ·conspiracy. *Cf. United States v. Bynum,* 566 F.2d 914, 928 (5th Cir.), *cert. denied,* 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978) (antagonistic statements made by Becker against coconspirator Procacci were "obviously made in furtherance of the conspiracy" because Becker made the statements while instructing another in ongoing auto theft conspiracy; independent evidence of Procacci's connection to the conspiracy was not in question).

The Government insists that payment was a common objective of the charged conspiracy. It is of course true that importation of marijuana is rarely an eleemosynary endeavor but is usually conducted for profit. Such an observation, however, does not aid in analysis of the facts of the present case. We are not stating that the "in furtherance of" requirement is never met unless the coconspirator statement advances the common objective of *all* the conspirators, only that under the facts of this case, the interests of Bobby Flores and appellant were in such direct conflict, and Flores' claim for remuneration was so tangentially related to the accomplishment of the underlying transaction, that the policies of Rule 801(d)(2)(E) would not be served by admitting Flores' statement absent an applicable exception to the general prohibition of hearsay evidence.[15] *Cf. United States v.*

---

14. *See United States v. Birnbaum,* 337 F.2d 490, 495 (2d Cir. 1964); *United States v. Goodman,* 129 F.2d 1009, 1013 (2d Cir. 1942); *Van Riper v. United States,* 13 F.2d 961, 967 (2d Cir. 1926). *See generally United States v. Castillo,* 615 F.2d 878, 883 (9th Cir. 1980).

15. *See generally Ong Way Jong v. United States,* 245 F.2d 392, 396 (9th Cir. 1957); Davenport, *The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis,* 85 Harv.L.Rev. 1378, 1396–97 (1972).

*Sandoval-Villalvazo,* 620 F.2d 744, 747 (9th Cir. 1980) ("the trial court was warranted in inferring that [the challenged coconspirator statements] were designed to keep potential buyers from leaving the scene and were, therefore, in furtherance of the conspiracy"); *United States v. Schwanke,* 598 F.2d 575, 581–82 (10th Cir. 1979) ("in furtherance of" requirement met when common purpose had not deteriorated; "[t]he conspiracy was yet in being"); *United States v. Wood,* 550 F.2d at 442 (challenged statement relating to one coconspirator's role as "bagman" for entire conspiracy was, in absence of pay dispute, in furtherance of the common objectives of the conspiracy). *See also United States v. Meacham,* 626 F.2d 503, 511 n.8 (5th Cir. 1980); *United States v. Friedman,* 593 F.2d 109, 116 (9th Cir. 1979); *Continental Baking Co. v. United States,* 281 F.2d 137, 152 (6th Cir. 1960) ("It was in the interest of all [conspirators] that each not be met with price wars in local markets, and activities on the part of one to avoid such a situation were correctly considered to be in furtherance of the conspiracy.").

Thus, the court below erred. Such an error is tested by Fed.R.Crim.P. 52(a). *See United States v. Eaglin,* 571 F.2d 1069, 1081 (9th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). Rule 52(a) states the "harmless error doctrine"; error that does not affect substantial rights shall be disregarded. In the present case the overwhelming weight of the erroneously admitted testimony was prejudicial.

The judgment of the District Court is therefore REVERSED.[16]

---

16. In the event that the Government decides to re-try appellant, the District Court should be mindful of possible Sixth Amendment Confrontation Clause issues relating to the potential admission of the Floreses' statements under some exception to the hearsay rule. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *United States v. Castillo,* 615 F.2d 878, 883 (9th Cir. 1980); *United States v. Snow,* 521 F.2d 730, 734–36 (9th Cir. 1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976).