**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Esmerejidado GUERRERO,
Defendant-Appellant.**

No. 81–1059.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Oct. 1, 1981.

Decided Oct. 30, 1981.

Rehearing Denied Feb. 10, 1982.

**864**

Jeffrey R. Edelman, Denver, Colo., for defendant-appellant.

Carole C. Dominguin, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with her on the brief), for plaintiff-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The matter before the court is the appeal of Esmerejidado Guerrero who was convicted in the United States Court for the District of Colorado on a charge which is based upon 18 U.S.C. § 351(e), assault on a member of Congress. The assault consisted of the throwing of two eggs at Congressman John B. Anderson while he was addressing a political rally in Denver, Colorado. Congressman Anderson was a candidate for president of the United States at the time. There is no dispute about the throwing of the eggs. The issues raised are alleged trial and pretrial errors and particularly the contention of the defendant that he did not receive a speedy trial as required by that Act, 18 U.S.C. §§ 3161–74.

On August 5, 1980 Congressman John B. Anderson addressed a political rally in Denver, Colorado, in the course of his campaign for president. As Mr. Anderson left his local campaign headquarters later that afternoon, two eggs were thrown at him from the crowd that had gathered outside. At least one of the eggs struck Congressman Anderson. There were two secret service agents who accompanied Anderson and they saw the defendant and another person throw the eggs, gave chase and apprehended the defendant. He was released the next day on bond and was arraigned on August 14th. Trial was tentatively scheduled for September 29th. However, on September 26th the presiding judge granted the government's motion for a 45-day continuance because Congressman Anderson was going to be unavailable until after the presidential election.

At the trial Anderson testified that he had been apprehensive and fearful during the incident and that he had been struck by at least one of the eggs. Testimony was given also by the two secret service agents, together with a Denver police officer, who identified the defendant as one of the individuals who had thrown the eggs from the crowd. Also introduced into evidence was a television news videotape showing some footage of the incident itself. Hence there is no dispute about it.

The defendant was convicted and was sentenced to thirty days imprisonment with work release. This appeal followed.

The contentions which are advanced by defendant on this appeal are briefly described as follows:

I. That the trial court failed to comply with the Speedy Trial Act, 18 U.S.C. §§ 3161, 3162 and Rule 50(b) of the local Rules of Court for Colorado.

II. That the trial court erred in receiving into evidence a videotape which was played without the sound and which depicted the actual throwing of the eggs at Congressman John Anderson. It does not show the defendant perpetrating the act; it shows the eggs coming from his direction. The picture also showed the defendant being chased by plainclothes officers.

III. That the statute is overbroad, is an invasion of the defendant's right of free speech and political speech as well, or that the statute is inapplicable to John Anderson because he was not functioning as a Congressman. Instead he was running for president. The bottom line is that Anderson was not serving as a Congressman and therefore the statute was not applicable to him.

## I.

### WAS THERE A VIOLATION OF THE SPEEDY TRIAL ACT?

On October 6, 1980 the trial court entered an order in which it was stated that the trial of the defendant-appellant herein, which was set for September 20, 1980, would be continued on the motion of the government. The defendant's argument is that the lapse of 101 days between arraignment and trial violated the Speedy Trial Act, 18 U.S.C. §§ 3161—3174. Section 3161(c)(1) provides that:

following a plea of not guilty the trial of a defendant charged with commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Section 3161(h) allows continuances to be excluded in computing the time within which trial must commence, under conditions set forth in § 3161(h)(8) and provides:

That the court may exclude any period of delay resulting from a continuance granted by any judge at the request of the attorney for the government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial.

The provision goes on to say that:

No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

This, of course, is the nub of the problem in the present case. Our inquiry is whether or not the court satisfied this latter provision by stating, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweighed the best interests of the public and the defendant in a speedy trial.

In the event that there was a failure to comply with the seventy day time limit and if the above provision contained in § 3161(h) is not satisfied, the sanction would be dismissal of the case. 18 U.S.C. § 3163(c); *United States v. Hay*, 527 F.2d 990, 995, n.8 (10th Cir. 1975); *United States v. Fielding*, 645 F.2d 719, 721 (9th Cir. 1981). In reviewing a matter of this kind both the standards of "clearly erroneous" and "not normally reversible error" are applicable. *See, United States v. Fielding, supra* at 721–22. Moreover the defendant is not, in these circumstances, required to assume the burden of proof to show that this continuance prejudices his defense. The substitut-

ed standard is if the continuance time was improperly excluded. 18 U.S.C. § 3162(a)(2).

This is not to say that the court may not consider some extraneous factors in deciding whether to dismiss with or without prejudice, however, 18 U.S.C. § 3162(a)(2). In this case the trial court explained in a written order in its grant of the forty-five day continuance at issue here with the following statement. In the mentioned order it was noted that the matter came before the court on the motion of the government for a continuance of the trial, the facts having been presented and the matter having been considered, the court finds that the ends of justice will be served by granting the continuance. Now, therefore, it is

ORDERED that a continuance is granted to December 8, 1980. The court finds that the ends of justice served by taking this action outweigh the best interests of the public and the defendant in a speedy trial for the following reasons:

An essential witness will be unavailable for trial. A forty-five day period of time shall be excludable under the provisions of the Speedy Trial Act.

The motion calls attention to the fact that the reason for the motion was that John Anderson was seeking a postponement of his appearance until after the election on November 4, 1980. The motion goes on to say that Mr. Anderson was a candidate for president of the United States and had been and was currently engaged in his campaign for said office. The motion also said that as a result of Mr. Anderson's campaign schedule, he was resisting appearing at the trial of defendant before the termination of the election on November 4, 1980. The court said that it is the government's goal not to become involved collaterally or otherwise in Mr. Anderson's campaign for the presidency of the United States and that it is the government's goal to limit undue publicity in the defendant's trial. The motion further set forth the standard by saying that the government submits that the ends of justice served by the granting of such continuance outweighs the best inter-

est of the public and the defendant in a speedy trial. The motion also stated that the case was unusual and involved the prosecution of an assault upon a member of Congress who was also running for president of the United States and who had made commitments to appear during the pendency of his campaign prior to November 4, 1980, the day of the general election.

In view of the cryptic form of the order granting the continuance it is essential that the motion for continuance by the district attorney has to be considered in order to judge whether the trial court satisfied the statutory provision. It is certain that the judge was fully aware of the content of § 3161(h)(8) of the Act. The order continuing the trial shows this in that it grants the motion fully and completely and states that the ends of justice, which are referred to in the motion, outweigh the best interests of the public and the defendant in a speedy trial and that an essential witness will be unavailable for trial.

█ It is important to recognize that the trial court did not follow the literal terms of the statute. Had the court done so it would have repeated that which was in the motion, namely that John Anderson was engaged in campaigning for the presidency of the United States and did not wish to get undue publicity and was unable to satisfy the requirement of his presence. But, was it necessary for the court to expound the surrounding facts? Not only did the motion for continuance set forth the basic and underlying facts; undoubtedly the circumstances were so obvious that the court could not fail to have taken judicial notice of these facts as could have every interested person in the case. So the question at issue boils down to whether, when the facts have been presented to the court and the court has acted upon them, it is still necessary for him to articulate those same facts.

Our conclusion is that this is a case of unusual character and that the court could notice the allegations in the motion and could act upon them as he obviously did. The basic and underlying facts were so obvious that they were present in the sur-

rounding atmosphere, so to speak. Certainly Anderson was an essential witness because only he could testify that he had been aware of the threat and apprehension of it. Therefore, in our judgment, the statutory provision requiring that there be an articulation by the trial judge is satisfied, even though the judge did not repeat the facts involved.

▪ Based on the foregoing we conclude that there has not been a violation of the Speedy Trial Act and that this contention (which is the strongest point that is offered by the defendant) does not justify the conclusion that there has not been compliance with the statute and that the sanction of dismissal must be imposed. We agree with the government and with the district court that the ends of justice served by the granting of the continuance were paramount. Political campaigning is a constitutionally protected activity, *Elrod v. Burns*, 427 U.S. 347, 370–371, 96 S.Ct. 2673, 2688, 49 L.Ed.2d 547 (1976), and in the present instance the right to campaign without interference was properly found to outweigh "the best interests of the public and the defendant in a speedy trial." Indeed, while we recognize that the defendant always has an interest in a speedy trial and that is the policy of the Act, nevertheless there is no specific reason which supports the defendant's particular interest in avoiding the forty-five day continuance which in effect was brought about by him. Anderson did not relish suffering another such incident. In sum, the forty-five day duration of the continuance was properly excluded from the elapsed time of calculation and the defendant's speedy trial claim must be rejected.

## II.

### DID THE COURT ERR IN RECEIVING IN EVIDENCE THE TELEVISION NEWS VIDEOTAPE AND IN ALLOWING IT TO BE SHOWN TO THE JURY?

Defendant contends that the value of the tape as evidence is outweighed by the danger of unfair prejudice and unfair prejudice did result.

In a criminal prosecution much of the evidence is prejudicial to the defendant but that does not rule it out if it is relevant and it is competent as well, as this evidence was when you can gainsay the value of a motion picture, the commission of the crime. Indeed this is the answer to a prosecutor's dream, to have such evidence as this.

▪ In any event, the balancing of probative value against prejudicial effect is a matter which is within the discretion of the trial court. *United States v. Parker*, 604 F.2d 1327, 1329 (10th Cir. 1979). Also Federal Rules and Practices favor the admission of evidence, rather than its exclusion if the proffered evidence has any value at all. *United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977); *Julander v. Ford Motor Company*, 488 F.2d 839, 848 (10th Cir. 1973).

▪ We are unable to perceive any indication that the trial court abused its discretion in admitting the videotape. The court viewed the tape before it was shown to the jury, and limited its impact by allowing only the visual portion to be presented. Furthermore, even if the tape was improperly admitted, the error was harmless. Defendant apparently views the videotape's implied identification of him as the egg thrower as its most objectionable effect, yet the prosecution offered other substantial testimonial evidence to prove that point. *Cf., United States v. Hayles*, 471 F.2d 788, 793 (7th Cir.) (admission of tape recordings of incriminating conversation was harmless error; other direct evidence indicated that defendants had committed the crime charged), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 690 (1973).

## III.

### A.

▪ Defendant also makes an argument that his pretrial motion to dismiss the charges against him should have been granted for constitutional reasons. Unfortunately for the defendant, there does not appear to be merit in either of these contentions.

Defendant's argument is that in throwing eggs he was exercising rights which are protected by the First Amendment of the United States Constitution. He declares that his actions amounted to symbolic political speech and were insufficiently offensive or dangerous to implicate the legitimate governmental interest in regulating some forms of speech-related conduct. Thus, he claims that this was merely a matter of expression which has first amendment protection. Again defendant is subject to our having spoken on the subject. We refer to a recent decision of this court in *United States v. Calderon*, 655 F.2d 1037 (10th Cir. 1981), in which it was said:

> [H]urling missiles at a speaker is not under any circumstances worthy of inclusion under the protection afforded symbolic speech no matter how entangled with forms of protected speech.

Furthermore, there is plainly a substantial governmental interest, unrelated to the suppression of free speech, in protecting the members of the Congress from physical assault. The encroachment on a defendant's alleged first amendment freedoms is no greater than essential to the furtherance of the governmental interest. *See, United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Accordingly, the evidence in question is not to be regarded as a form of expression subject to protection.

### B.

■ Defendant's next constitutional contention is that 18 U.S.C. § 351(e) violates due process principles in that it is vague and overbroad. He declares that certain terms of the statute are so indefinite that persons of common intelligence "must necessarily guess at [their] meaning and differ as to [their] application," *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1946). The defendant urges, in particular, that the terms "assault" and "member of Congress" fall into that category. Section 351 gives adequate notice to persons of ordinary intelligence of the conduct that it is intended to prohibit. *United States v. Calderon, supra*, at 1039;

*United States v. Bishop*, 555 F.2d 771, 774 (10th Cir. 1977). Likewise, the statute does not include innocent or constitutionally protected conduct within its proscription. *See, Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

■ The terms "assault" and "member of Congress" are neither vague nor, as defendant additionally insists, inapplicable to the facts of this case. The throwing of eggs was found to constitute assault in *United States v. Calderon, supra* at 1038, and is similar to conduct construed as assault in other contexts. In truth it is a battery, as well, but it includes an assault. A case that is somewhat parallel is *United States v. Masel*, 563 F.2d 222, 323 (7th Cir. 1977). This involves spitting in the face of a senator. It was held to be an assault under § 351(e); existence of common law battery may be considered proof of assault, *cert. denied*, 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 523 (1978); *United States v. Gan*, 636 F.2d 28, 29–30 (2nd Cir. 1980). In *Gan* the defendants threw red paint at ambassadors and were held guilty of assaulting foreign officials and internationally protected persons under § 112(a); assault under § 112(a) is similar to assault under § 351(e). As to the meaning of "member of Congress", it cannot be disputed that John Anderson was at the time serving a term in Congress. Thus, he was within the protection of the statute. Contrary to the contention of the defendant, the fact that he was engaged in running for office of the president does not do away with protection provided by § 351. The defendant has argued that he is entitled to protection only while he is on the floor of the House of Representatives or perhaps in his House of Representatives office. Not true. He is entitled to protection because of his status. *See, United States v. Calderon, supra* at 1038.

### C.

■ The next constitutional question which is advanced by defendant is that § 351 is invalid on equal protection grounds.

Defendant's contention is that the statute subjects the class of persons who assault members of Congress to potentially more harsh penalties than those which are imposed upon persons who assault ordinary citizens. We find, however, that the statute is valid because it is a classification and it is reasonable. Congress certainly may differentiate, in defining crimes, the persons who are to be given the protection. If the classification has a rational basis, and this does, absent disproportionate impact on suspect classes or interference with fundamental rights, it should be upheld. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). The extension of special protection to members of Congress is highly rational, as this court said in *United States v. Calderon, supra*; the protection should be such as to serve to impede potential violators from carrying out such attacks. Additionally, no evidence supports defendant's contention that the statute is unconstitutional as applied. The defendant's trial fairly established that his actions violated this section, and there has been no showing that the statute has been enforced in an uneven-handed way. *See, United States v. Antelope,* 430 U.S. 641, 648–9, 97 S.Ct. 1395, 1399–1400, 51 L.Ed.2d 701 (1976); *United States v. Masel, supra.*

We have considered, we believe, all aspects of the case and we have concluded that the contentions of defendant, although imaginative, are devoid of merit. Based upon this conclusion, judgment of the district court is affirmed.

McKAY, Circuit Judge, concurring in part and dissenting in part:

While I concur in parts II and III of the court's opinion, I regret that I cannot join in part I. The Speedy Trial Act, 18 U.S.C. §§ 3161 and 3162, was enacted despite considerable resistance from both prosecutors and judges. The Act has not been uniformly popular among trial judges because it imposes strict time constraints that must be observed in conducting criminal trials. Under prior rules time constraints were much more flexible and better suited to the almost impossible calendar management problems that constantly plague the district courts. Congress no doubt had this in mind when it not only drafted a strict rule with teeth, but in addition imposed the unusual requirement that trial courts specifically state their reasons for exercising the only important discretion available to them under the new Act. Congress recognized that legitimate counter-pressures inevitably would develop, allowing discretion in the granting of continuances to reduce the new rule to a carbon copy of the old flexible standard. Furthermore, it is not only the overworked trial courts that are hit hard by the strict new rule. Prosecutors have a vested interest in a return to the more relaxed standards of the past to accommodate their own excessive work loads. Congress was aware of all these matters and clearly showed that it intended there be no evasion of the new standards. Only vigilance by Courts of Appeals can prevent the erosion of the congressional mandate without Congress' consent.

As the majority of this court correctly observed, the burden is on the government, not the defendant, to justify any continuance that extends the strict 70-day limit of the Act. The language of the Act spells out the degree of specificity that must be reflected in the trial court's findings. The majority tacitly concedes that the trial court did not comply with the congressional mandate. They even describe the order as "crypt" in form. It is not difficult to sympathize with the court's sustaining this action. We should not, unless unavoidable, play into the hands of those who wish to exploit the courts merely to be disruptive or to gain publicity. However, it is quite possible that if the trial court had carried out its task in the manner mandated by Congress, it properly could have reached the result it did. The evil lies in our approval of a form of order which permits undisciplined avoidance of the 70-day limit and undisciplined review of trial court orders extending the limits Congress imposed on courts and prosecutors.

This record shows little effort by the prosecutors to work out an arrangement that would meet both the demands of the Speedy Trial Act and the very sensitive situation presented by these peculiar facts. We are left with the impression that it could not be done. However, Congress clearly indicated that it did not intend that either this court or the trial court speculate when extending, over objection, the time a criminal defendant must wait to be brought to trial. I only hope that this case will be confined to its peculiar facts and will not be the harbinger of an eventual erosion of this important statute rooted in constitutional imperatives.

I would reverse for failure to comply with Section 3161(h)(8).