Robert S. LEITERMAN, Appellant,

v.

Ruth RUSHEN, Director, California Department of Corrections, Appellee.

Gary L. BARNI, Appellant,

v.

Ruth RUSHEN, Director, California Department of Corrections, Appellee.

Nos. 82–5088, 82–5089.

United States Court of Appeals,
Ninth Circuit.

Argued Aug. 2, 1982.

Submitted Aug. 12, 1982.

Decided April 19, 1983.

Gerald Goldfarb, Los Angeles, Cal., for appellant.

Richard Cullather, Deputy Atty. Gen., Los Angeles, Cal., for appellee.

Before ELY, GOODWIN and WALLACE, Circuit Judges.

GOODWIN, Circuit Judge.

Leiterman and Barni, California parolees, appeal the dismissal of their petitions for writs of habeas corpus. They contend that the police conduct associated with their arrest was so shocking that federal habeas relief should be imposed upon the California courts to set aside their convictions even though the police conduct did not directly produce the evidence used to convict.

Local police suspected that Barni and one Kenneth Wells were selling and transporting marijuana. Six officers of the Riverside Police Department and several officers of the Los Angeles Police Department assembled near a parking lot in a business area in Riverside. On June 2, 1978, at 9:30 p.m., surveilling officers saw Barni and Leiterman, among others, with Wells, transferring large packages from one car to the trunk of another car. These observations, together with other facts known to the police, provided probable cause to arrest the suspects and to search the cars for marijuana.

Two plainclothes officers holding pistols advanced toward two of the suspects. The officers said: "Police officers, halt." At that point petitioners and their associates fled. Several officers opened fire. One Peter Salmin was shot in the back and killed. Barni was wounded. Leiterman said he was shot at, but the shots missed. Wells escaped. One automobile was riddled by a fusillade. Other cars were hit. In due course, officers found 75 pounds of marijuana in the trunk of one car. They also found $5,000 in cash. No weapons were found.

At their state court trial, Barni and Leiterman moved to suppress the evidence, counsel asserting only that the police lacked probable cause to seize it. No pretrial mo-

tion had been made to suppress any evidence, either as the fruit of an arrest made illegal by excessive police violence or for any other reason. No pretrial motion was addressed to the effect of excessive violence.

After they were convicted in state court, the petitioners retained new counsel and appealed to the California Court of Appeals. The appeal presented *inter alia*, these issues: (1) whether petitioners' Fourteenth Amendment due process rights were violated by the excessive police violence, and (2) whether trial counsel's failure in the pretrial and trial stages to challenge the excessive police violence violated their Sixth Amendment right to the assistance of competent counsel.

The California Court of Appeals declined to reach the due process issue because it had not been raised at trial, and did not discuss the issue of incompetent counsel. Petitioners then sought post-conviction relief in all the available state courts. They have exhausted their state remedies for the purposes of this appeal.

The pending petitions in the United States District Court produced a two-day hearing and testimony from 20 witnesses. The district court entered judgments of dismissal.

Petitioners argued that excessive police violence constituted a violation of the due process clause of the Fourteenth Amendment requiring that their state court convictions be set aside. They cite no cases squarely in point. (They cited a number of entrapment cases and cases in which evidence had been seized illegally.) The district court found that the police violence was indeed excessive, but that the violence did not render the petitioners' convictions unconstitutional because: (1) the police conduct had no impact on the fairness of the trial, (2) the officers had probable cause, before any shooting started, to arrest and to search the car; and (3) the police conduct, although unacceptable, did not "rise to the level of outrageousness necessary to overturn the conviction."

## A. *Due Process Claim*

We have noted in dicta that outrageous and shocking conduct by law enforcement agents might so infect a conviction with deprivation of constitutional rights that the conviction will be set aside on due process grounds, *United States v. Fekri*, 650 F.2d 1044, 1045–1046 (9th Cir.1981), (entrapment —affirmed). We have found no cases, however, actually setting aside a state conviction unless the conduct in question was causally related to the conviction. *See, e.g., Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (stomach pump). There is some authority for the proposition that a federal conviction might be set aside if the defendant could show that he was brought within the territorial jurisdiction of the court by means of outrageous activities by United States officials. *See, e.g., United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974) (conviction challenged (unsuccessfully) on ground defendant had been abducted and tortured by local police in Uruguay and tortured in Brazil); *on remand, United States v. Toscanino*, 398 F.Supp. 916 (E.D. N.Y.1975) (no claim of participation by United States officials in the abduction or torture). No causal connection between the police violence and the conviction is presented in this appeal.

This court has had only limited occasion to refer to the *Toscanino* case in cases that began as federal cases. *See United States v. Fielding*, 645 F.2d 719, 723 (9th Cir.1981). In *Fielding*, the defendant had made no showing that the United States was involved in his mistreatment. *Id.* at 724. In this case, unlike *Fielding*, the misconduct was committed by local law enforcement officers. Those officers were subject to some degree of federal constitutional oversight by their own courts and to a degree of indirect monitoring in the federal courts if federal constitutional violations were instrumental in convicting. The officers had probable cause to search the defendants' automobiles and to seize any contraband they might find, before the shooting started. The shooting had nothing to do with the production of evidence or the decision to prosecute, and accordingly did not, of itself,

call for the exclusion of any specific evidence on due process grounds.

## B. *Illegal Arrest*

It has been suggested that excessive police violence can deprive the government of criminal jurisdiction where an arrest that otherwise might have been lawful is made unlawful by the manner in which it is executed. 1 LaFave, Search and Seizure, § 1.7 (1978). But we have not found a case so holding. In the case at bar the prisoners may have been able to establish by timely pretrial motions in the state court that they had been subjected to an illegal arrest. No such motion was made. The consequences of an illegal arrest on the state's ultimate power to prosecute would have raised substantial questions for the California courts. We do not have the benefit of their thinking because the question was never raised.

## C. *Cause and Prejudice*

■ Assuming that petitioners have made a colorable constitutional or federal statutory claim, the Supreme Court has recently reminded federal habeas corpus courts that not every error and omission by defense counsel in a state trial will lay the foundation for federal habeas relief. When a procedural default (here, the failure to make a pretrial motion, or an in-trial objection) bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief without a showing of cause and actual prejudice. *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982).

■ The state contends in this court that the trial court properly denied relief because the failure in the state court to raise the question of the illegal arrest constituted a procedural default for which there was shown neither cause nor actual prejudice. The district court found cause, however, by finding that the matter was overlooked through the inadvertence of counsel. Counsel stated on the record that it never occurred to him that the "police violence of which I was fully aware had any legal significance or utility" in the defense of his clients. The district court found prejudice, primarily in reliance upon *Myers v. State of*

*Washington,* 646 F.2d 355 (9th Cir.1981), *vacated,* 456 U.S. 921, 102 S.Ct. 1964, 72 L.Ed.2d 436 (1982). There was, however, no "actual prejudice" because the illegality, if any, of the arrest was external to, and had no causal connection with, either the evidence used to convict or the decision to prosecute.

The petitioners argue, of course, that there was a massive violation of due process. There may have been, but they fail to point out how that violation was causally related to the conviction from which they seek relief. Misconduct by the police may give rise to a variety of claims and remedies. Habeas corpus, however, usually requires some causal nexus between the governmental action that violated a constitutional right and the conviction from which relief is sought.

Affirmed.